345 So.2d 618 (1977)
Cleveland FELLS
v.
STATE of Mississippi.
No. 49361.
Supreme Court of Mississippi.
April 27, 1977.
*619 Curtis L. Collins, Clyde W. Mullins, Natchez, for appellant.
A.F. Summer, Atty. Gen., by Wayne Snuggs, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SMITH and LEE, JJ.
PATTERSON, Presiding Justice, for the Court:
Cleveland Fells was convicted of armed robbery by the Circuit Court of Adams County and sentenced to twenty years in the state penitentiary.
On January 31, 1975, at about 6:24 p.m., Boothe's Package Store, Inc., in Natchez was robbed. The clerk of the store, Mrs. Joyce Johnson, was then confronted by a robber brandishing a revolver, who stated: "This is a robbery," or, "This is a holdup." Waiving the gun in her face, he demanded the contents of the cash register and when it was obtained, Mrs. Johnson was commanded to "fall down" whereupon the robber turned to flee and while doing so, dropped some coins. Violating a previous order of silence, Mrs. Johnson exclaimed: "You're dropping part of it" The bandit replied by firing a shot into the ceiling and fleeing.
Mrs. Johnson remained on the floor until her brother entered the shop a moment later. He telephoned the police and Mrs. Johnson described the robber as a black male of slender build between five feet eleven inches and six feet tall, weighing 145 to 150 pounds and wearing dark trousers with a print shirt. While the Johnsons were thusly engaged, an employee entered the store and upon learning of the robbery, informed them that upon exiting his car, he had seen an individual, running at the time, proceed toward East Oak Street. Approximately two and one-half minutes after receipt of this information by the police, the appellant was arrested on Oak Street. Oak Street is about one block south of Boothe's Package Store as it turns off of Pine Street. The arresting officer testified that the appellant fitted the description he had received of the robber.
When Fells was frisked, he had $176 in his right front pocket consisting of five, ten, and twenty dollar bills with the exception of a one dollar bill. An accounting revealed the store to have been robbed of $274.98, largely in twenties, tens, fives, ones and some change.
*620 Thirty or forty-five minutes after Fells was arrested, a revolver was found on Oak Street within fifty feet of where the appellant was apprehended and between that spot and the liquor store. However, no fingerprints were obtained from the weapon.
Shortly after 7:00 p.m. the same day, Mrs. Johnson identified the appellant as the robber from a "lineup" at the Natchez Police Station. Four black males, other than the appellant, participated and all were trusties from the city or county jails. The men were dressed in street clothing with light shirts. Only Fells wore a "print" shirt, the same he had on at the time of arrest.
The appellant's first trial ended in a mistrial because the jury was unable to reach a verdict. During the second trial both Mrs. Johnson and a police investigator, Officer Hude, testified concerning the methods employed and the result obtained at the out-of-court identification procedure. Additionally, Mrs. Johnson testified that she observed the appellant for one or one and one-half minutes at the robbery when, "[she] stared in his face, directly into his eyes."
Fells argues that his conviction is improper because, prior to indictment, he was subjected to an unnecessarily suggestive police lineup without the benefit of counsel, and evidence of such was given at the trial in an effort by the state to improperly "bolster" its case, which singly, or in combination, violated his Fifth, Sixth and Fourteenth Amendment rights under the United States Constitution as well as Article 3, Sections 14 and 26, of the Mississippi Constitution (1890).
Concerning appellant's lack of counsel at the lineup conducted shortly after the robbery, in Cox v. State, 326 So.2d 794 (Miss. 1976), this Court reaffirmed its adoption of the rule announced by the United States Supreme Court in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), and held that the right to counsel does not apply to preindictment lineups. Accordingly, no Sixth Amendment deprivation is here presented.
The appellant's Fifth Amendment claim focuses upon the procedure employed at the lineup thus challenging the trustworthiness of the resulting identification evidence adduced at trial which led to his conviction. However, Fells does not direct the Court's attention to any specific instances of objectionable procedure, but rather believes it "overwhelming (sic) obvious that the lineup, the procedure used, and the parties involved make it suggestive and conducive to irreparable mistaken identification."
When similarly confronted in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the United States Supreme Court said:
... It is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. [377] at 384, 88 S.Ct. [967] at 971, [19 L.Ed.2d 1247]. While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process... . Suggestive confrontations ... increase the likelihood of misidentification... .
What is less clear from our cases is whether ... unnecessary suggestiveness alone requires the exclusion of evidence... .
We turn, then, to the central question, whether under the "totality of circumstances" the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime *621 [Mrs. Johnson was face-to-face with the robber separated only by a counter in a well-lighted store], the witness' degree of attention, the accuracy of the witness' prior description of the criminal [Mrs. Johnson missed his true height by one inch and weight by five pounds; the description of his clothing was exact], the level of certainty demonstrated by the witness at the confrontation [Mrs. Johnson was "positive" and unwavering], and the length of time between the crime and confrontation [approximately thirty minutes]... . (409 U.S. at 198-199, 93 S.Ct. at 381-382, 34 L.Ed.2d at 410-411)
When the Biggers test is applied, the fact that Fells was wearing a shirt similar to that described by Mrs. Johnson, and which he wore when arrested, did not make the lineup so suggestive as to result in the "likelihood of misidentification." See State v. Banks, 296 So.2d 314 (La. 1974); McCay v. State, 51 Ala.App. 307, 285 So.2d 117 (Ala. 1973). Rather, the identification of Fells was direct and resulted from the previous "eyeball to eyeball" confrontation a few minutes before in the well-lighted liquor store.
Having found no error of constitutional moment, the decisive issue now concerns the propriety of permitting in evidence the testimony of Mrs. Johnson and Officer Hude regarding the extra-judicial identification.
Traditionally, evidence of an extra-judicial identification has been considered hearsay and this Court has categorized such as impermissible "bolstering." See Porter v. State, 339 So.2d 564 (Miss. 1976). A divergent view has arisen, however, which admits the prior identification as independent, substantive evidence of identity by a witness who is available at trial for cross-examination as well as testimony regarding the identification by third parties present who are also available for cross-examination. Martin v. Commonwealth, 210 Va. 686, 173 S.E.2d 794 (1970); State v. Simmons, 63 Wash.2d 17, 385 P.2d 389 (1963); People v. Gould, 54 Cal.2d 621, 7 Cal. Rptr. 273, 354 P.2d 865 (1960).
A common theme linking those authorities accepting this evidence may be stated as follows:
1. Need; eye witnesses to the crime may be unavailable for whatever reason or less certain in their identification due to the passage of time before trial or altered appearance of the defendant.
2. Reliability; if the procedure used to obtain the identification is not overly suggestive, then subjecting the witness to cross-examination at trial will insure its trustworthiness.
Moreover, it would seem to be a dictate of common sense that the "best evidence" of identification is normally the first identification because it is nearest in time to the crime. IV Wigmore on Evidence, section 1130 (1972), analyzes such evidence as follows:
Offered (6) after impeachment as to recent contrivance (continued): Statements identifying an accused, on a former occasion. Ordinarily, when a witness is asked to identify the assailant, or thief, or other person who is the subject of his testimony, the witness' act of pointing out the accused (or other person), then and there in the courtroom, is of little testimonial force. After all that has intervened, it would seldom happen that the witness would not have come to believe in the person's identity. The failure to recognize would tell for the accused; but the affirmative recognition might mean little against him.
The psychology of the situation is practically the same as when recent contrivance is alleged. To corroborate the witness, therefore, it is entirely proper (on the principle of § 1129 supra) to prove that at a former time, when the suggestions of others could not have intervened to create a fancied recognition in the witness' mind, he recognized and declared the present accused to be the person. If, moreover (as sometimes is done) the person was then so placed among others that all probability of suggestion (by seeing him handcuffed, for example) is still further *622 removed, the evidence becomes stronger... .
* * * * * *
This is a simple dictate of common sense, and was never doubted in orthodox practice. That some modern courts are on record for rejecting such evidence is a telling illustration of the power of a technical rule of thumb to paralyze the judicial nerves of natural reasoning.
A review of Porter v. State, 339 So.2d 564 (Miss. 1976), Butler v. State, 217 So.2d 3 (Miss. 1968), Short v. State, 211 So.2d 545 (Miss. 1968), and Anderson v. State, 171 Miss. 41, 156 So. 645 (1934), convinces us that they should be modified to the extent hereinafter related. Compare Cody v. State, 167 Miss. 150, 148 So. 627 (1933).
We are of the opinion, and now hold, that the principal witness to a crime may testify concerning an out-of-court identification whether it occurs in a police lineup, a personal confrontation or otherwise because the initial identification being nearest in time to the event has, in our opinion, the greater likelihood of accuracy and truthfulness being undimmed by fading memory and intervening events occasioned by the passage of time. It is not intended that the foregoing be construed to eliminate a corroborating in-court identification.
We further hold that if the principal witness' identification is impeached, then independent evidence of the identification may be introduced through third persons present at the out-of-court identification. We are persuaded to this view because such evidence not only has greater probative force and thus preserves the better evidence, but also because the witness testifying is in court and subject to cross-examination. The basis for this rule may be found in Martin v. Commonwealth, 210 Va. 686, 173 S.E.2d 794 (1970), State v. Simmons, 63 Wash.2d 17, 385 P.2d 389 (1963), and People v. Gould, 54 Cal.2d 621, 7 Cal. Rptr. 273, 354 P.2d 865 (1960), but without the impeachment limitation.
In giving application to the Biggers, supra, rule, the totality of the circumstances, we conclude that Mrs. Johnson's testimony at trial concerning her positive identification of Fells in the police lineup as the person who pointed the gun and robbed the liquor store, made within minutes after the crime was perpetrated, was not reversible error even though it dealt with an out-of-court identification. We are also of the opinion the testimony of Officer Hude corroborating Mrs. Johnson's lineup identification of the appellant was also not error because the employee witness who observed the fleeing individual running toward Oak Street testified that from his view of the assailant's lower extremities, it was not the appellant. Or differently stated, with this impeachment, the corroborating testimony was proper.
We have considered all other assignments of error and find them without merit. We are therefore of the opinion that the cause should be affirmed.
AFFIRMED.
GILLESPIE, C.J., and ROBERTSON, SUGG, WALKER, and LEE, JJ., concur.
SMITH, J., INZER, P.J., and BROOM, J., dissent.
SMITH, Justice, dissenting:
It is one thing, perhaps, to permit the victim of a crime to say that she saw and recognized an accused as the perpetrator shortly after the fact, but it is surely quite a different matter to permit the prosecution to place third persons on the stand for the sole purpose of testifying that they saw the victim point out the accused in a formal police lineup. This procedure is capable of producing any number of "bolstering" witnesses, since it is normally conducted by and in the presence of law enforcement officials who are actually in charge of and engaged in the identification of one they have taken into custody and in his prosecution, and who have, at least to some extent, already satisfied themselves that they have apprehended the right man. It is quite unlikely that disinterested or impartial witnesses will have been invited or be in attendance *623 in such circumstances. Moreover, in this case, the victim's courtroom identification of Fells, based upon her opportunity to observe him during the course of the robbery, had not been impeached or challenged. The formal lineup is a device by means of which, if it is permitted to be so used, any number of bolstering witnesses may be "manufactured" and brought to testify that the victim had pointed out the accused. By that means prominent officials and other influential citizens, who have no real knowledge of the case, may be made "states witnesses" and the jury led to feel that they are supporting the prosecution.
As pointed out in the controlling opinion procedures such as that employed in this case will have the effect of facilitating convictions and this perhaps outweighs the "shoring up" by pure hearsay of a shaky identification. Wisely or not, the law guarantees a fair trial to every person accused of crime and this involves the requirement that the evidence necessary to convict be lawful and lawfully obtained. The hearsay testimony of a prosecutorial official, present as such at a lineup, that the victim of a crime had there identified a person already taken into custody as the perpetrator is pure bolstering and nothing more. Its intrinsic unfairness substantially outweighs any supposed advantage that might be obtained in the search for truth. Porter v. State, 339 So.2d 564 (Miss. 1976), Butler v. State, 217 So.2d 3 (Miss. 1968), Short v. State, 211 So.2d 545 (Miss. 1968), Anderson v. State, 171 Miss. 41, 156 So. 645 (1934).
It is trite to say that a "trial is not a game." The adversary system, however, whatever its merits, undeniably has spawned the use of stratagems and devices, unrelated to justice, designed "to do the other side in." The courts of this country have adopted generally the traditional Anglo-Saxon concept of fair play as a necessary ingredient of a fair trial. We are confronted in this case with a type of "manufactured" hearsay. The insistence of the prosecution upon its use is indicative of a realization that it will have a substantial impact upon a jury as being supportive of an otherwise unsupported "eyeball identification" of an accused, made by the victim, of a person hitherto a stranger, never seen before, and made upon the basis of a few moments observation under conditions of excitement, nervous strain and downright mortal fear. If the persuasiveness of the identification is to be enhanced by this type of hearsay, may it not become necessary, in all conscience, in keeping with traditional notions of fair play, to allow an accused to produce as a witness his priest (or anyone else of his selection) to testify that he, the accused, shortly after the commission of the crime had positively and unequivocally denied to the witness that he had committed it? The consequences of a mistaken identification in a criminal case are grave and should rest upon real evidence, not hearsay, however deliberately created.
I would adhere to the former pronouncements of this Court on the subject and remand this case for another trial.
INZER, P.J., and BROOM, J., join in this dissent.