430 So.2d 406 (1983)
Edward SMITH, Jr.
v.
STATE of Mississippi.
No. 54119.
Supreme Court of Mississippi.
April 6, 1983.
Rehearing Denied May 11, 1983.
Lee B. Agnew, Jackson, for appellant.
Bill Allain, Atty. Gen., by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and PRATHER and ROBERTSON, JJ.
BROOM, Presiding Justice, for the Court:
Murder in a hospital is the unique feature of this case. Trial of the defendant, Edward Smith, Jr., was conducted during March, 1982, in the Circuit Court of the First Judicial District of Hinds County. The jury found Smith guilty and the circuit judge, the Honorable William F. Coleman, fixed the sentence at life imprisonment. We affirm.
On appeal here, the only argument of defendant Smith is that the lower court erred "in allowing in-court identification by witnesses for the prosecution based on perusal of a new photograph shown them prior to their testifying."
Victim of the August 17, 1981, murder was James Jackson, who at the time was a patient in the intensive care unit of the University Hospital. Jackson was hospitalized for other gunshot wounds he received previously. Several other ICU patients occupied nearby beds. Registered staff nurse Teresa Joy Martin testified that Jackson's vital signs were stable immediately prior to the time when the defendant shot him at about 6:00 P.M. She testified that she was attending James Jackson when defendant *407 Smith "came to my left side ... had the gun pulled and came over to the man and said: `You son-of-a-bitch' and started shooting at him." Smith fired several shots, and Martin got a good look at him doing the shooting  she later identified him as the defendant Smith. Again she identified Smith on August 26 "in a lineup of five men." She described the intensive care unit as being well lit, and testified that the shooting did not take place during visiting hours. She saw the gunman leave the intensive care unit but "did not know if there was anyone else with him at the time." Other witnesses corroborated nurse Martin's testimony.
Dr. Rodrigo Galvez, a pathologist, autopsied victim Jackson's body, and established the cause of Jackson's death as being the gunshot wounds he received while hospitalized.
DID THE TRIAL COURT ERR BY OVERRULING DEFENDANT SMITH'S OBJECTION TO THE IN-COURT EYE WITNESS IDENTIFICATION OF SMITH AS THE ONE WHO SHOT JACKSON? Basis of the argument is the state's use of a photographic showup in front of several of the state's witnesses on the morning the case was tried. Argument is that the testimony of state's witnesses who identified defendant Smith in court should have been excluded because a new photograph of him was used to aid the state witnesses in their identification of the defendant prior to the trial, and thereby prejudicing him. He asserts that having to submit to the taking of a new photograph in jail amounted to forcing him to testify against himself and as such was a denial of his "Constitutional Guaranty [sic]".
As the state notes in its reply brief, the defendant's argument is not supported by any authority and therefore lacks persuasion. Ramseur v. State, 368 So.2d 842 (Miss. 1979); Harris v. State, 386 So.2d 393 (Miss. 1980). As to the constitutional argument, this argument was not asserted below and our rule is that such arguments not asserted at the trial level are waived. Pittman v. State, 297 So.2d 888, 892 (Miss. 1974); Stringer v. State, 279 So.2d 156, 159 (Miss. 1973).
According to the record, the killing of James Jackson by defendant Smith occurred in the presence of several eyewitnesses, some of whom had known Smith years previously. The state witnesses positively identified the defendant well in advance of the trial date.
According to the record, the state stipulated that a new photograph was taken of defendant Smith for the reason that the photographs which the state had already taken were very dark. Several state witnesses were allowed to see the new photograph on the morning of the trial and the defendant objected, claiming that he was materially prejudiced by the new photograph because it was used to help the witnesses identify him.
Careful scrutiny of the record reveals that the witnesses who testified for the state were positive and definite in their identification of the appellant as the murderer. According to their testimony, they were able to identify the defendant regardless of the new photograph.
The rule is that an in-court identification is not subject to suppression or objection unless it is shown to have been tainted by some suggestive out-of-court identification. In Fells v. State, 345 So.2d 618 (Miss. 1977) we quoted language from the United States Supreme Court's Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) which held:
It is, first of all, apparent that the primary evil to be avoided is "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. [377] at 384, 88 S.Ct. [967] at 971, [19 L.Ed.2d 1247].
345 So.2d at 620.
In the present case, there is not a substantial likelihood in any respect of any misidentification of the defendant.
Defendant Smith did not testify at the trial, but he presented testimony of witnesses whose testimony dealt with *408 whether he had a beard or goatee. Several other defense witnesses testified that defendant Smith was at home from 3:00 P.M. until 7:00 P.M. on the date when the killing was said to have occurred at about 6:00 P.M.
The jury rejected the testimony that the defendant was not at the University Hospital at the time of the killing and we cannot say that the jury verdict was unsupported by the evidence beyond a reasonable doubt. Neither do we find any reversible error regarding the presentation of the state's case with reference to identification of the defendant. Affirmance is required.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.