# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00299-SCT

*PATRICK LAMAR CAVETT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/27/96 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD A. REHFELDT |
| | RANDALL HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 7/23/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## I. INTRODUCTION

¶1. This case arises from the April 28, 1995, shooting death of seventeen-year-old Jason Brown. The record reflects that Jason Brown and Patrick Holiday left the Metrocenter Shopping Mall that night in Brown's blue Malibu. The Malibu had very expensive hubcaps and a good stereo system.

¶2. Brown and Holiday were pursued "bumper-to-bumper" for several miles by a maroon Cougar driven by the appellant, Patrick Cavett. Cavett was flashing the headlights at Brown. Three other boys were in the car with Cavett: Glynn Stevens, Robert Strahan, and Calvin "Kenyatta" Shelton. Holiday knew Shelton from church and school.

¶3. Brown stopped at an intersection. Holiday exited Brown's car and asked "why the [expletive]" they were being followed. Cavett said, "break yourself." Holiday knew this meant that he was "fixing to get robbed."

¶4. Several shots were fired from the maroon Cougar, three or four of which came from Cavett's 9 mm weapon. Holiday, who had been shot in the leg, ran back to Brown's car. Cavett drove the Cougar away from the scene. Brown, who never left his vehicle, was fatally shot in the head. Brown did not threaten the boys in the Cougar in any way.

¶5. On August 8, 1995, Cavett, age seventeen, and the three others (Calvin Shelton, Glynn Stevens, and Robert Strahan) were indicted in the First Judicial District of the Hinds County Circuit Court for Brown's murder. In February, 1996, Cavett, Stevens, and Strahan were tried together. Co-indictee Shelton testified against them. The jury convicted Cavett of murder, and he was sentenced to life in prison. Cavett's subsequent motion for a new trial was denied February, 27, 1996. On appeal, he raises the following issues for consideration by this Court:

## A. WHETHER CAVETT WAS DENIED A FAIR TRIAL?

## B. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEVER?

## C. WHETHER CAVETT WAS DENIED THE PROTECTION GUARANTEED IN THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT?

¶6. The issues raised by Cavett on appeal are without merit. Therefore, the judgment of the trial court is affirmed.

## II. LEGAL ANALYSIS

## A. WHETHER CAVETT WAS DENIED A FAIR TRIAL?

¶7. Cavett first argues that he was denied a fair trial by the actions of the trial judge and the prosecutor. Specifically, Cavett contends that he was denied a fair trial by 1) "the State's attorney continually asking leading questions and being sustained upon timely objection"; 2) the trial judge's failure "to grant the lawyers the respect they deserve" by threatening them with jail for contempt and telling them to "shut up and sit down"; 3) the trial judge's failure, upon request, to admonish the jury to disregard; 4) the trial court's failure to grant a mistrial; and, 5) the State's failure to inform defense counsel that a firearms expert would testify regarding the stippling on the decedent's arm.

### 1. The leading questions by the prosecutor.

¶8. Cavett contends that he received an unfair trial because, on numerous occasions, defense counsel successfully objected to leading questions posed by the prosecutor. Cavett argues that, although "leading questions occur in probably every case ever tried, there comes a saturation point wherein the technique causes an unfair result."

¶9. Cavett does not cite any authority in support of this argument, and, therefore, consideration of this issue is procedurally barred. "The appellant bears the burden on appeal, and we will entertain no claims for which no supporting authority has been cited." *Beckwith v. State*, 707 So. 2d 547, 597 (Miss. 1997) (citing *Allman v. State*, 571 So.2d 244, 254 (Miss.1990); *Smith v. State*, 430 So.2d 406, 407 (Miss.1983)). Furthermore, a review of the record reveals that Cavett's argument is specious.

## 2. The demeanor of the trial judge.

¶10. Cavett also argues that the demeanor of the trial judge on two occasions resulted in an unfair trial. However, neither of the disputed incidents occurred in the presence of the jury, and Cavett has demonstrated no prejudice therefrom.

¶11. The first incident of which Cavett complains occurred after a lengthy discussion on peremptory challenges, during which the trial court repeatedly told the defense attorneys that they would have twelve peremptory challenges among the three defendants:

> [STEVENS' ATTORNEY]: I understand, but what we're saying is in light of the Court's ruling that the Defendants collectively get 12 challenges. We don't agree with that, as Your Honor said, but in light of the Court's ruling, that's again putting us in the position where we're forced to try to agree on which 12 and [the defense attorneys] --

> THE COURT: I'm not going to advise you how to do it. I'd probably do it mathematically. Three into twelve goes four times. I don't know how to do it. I think it's a stupid rule but it's a rule.

> [CAVETT'S ATTORNEY]: Your Honor, I make a motion on behalf of Patrick Cavett for additional strikes as a result of the Court's ruling.

> THE COURT: Let me explain something. See, the more times I hear it doesn't convince me anymore that I ought to grant it.

> [CAVETT'S ATTORNEY]: I understand, but --

> THE COURT: Let me stop you. I'm denying it and I'm citing anybody for contempt who raises it again and states any reason that's one I've already heard before. I'm not going to spend all morning denying the same motions. Y'all are just saying the same thing and little children sitting in here know all you're doing is saying the same thing over and over again. I'm not hearing it anymore. If you've got a new motion you need to raise it. If you raise the same motion and you say the same thing to me, you're going to be fined. The only reason I'm not going to put you in jail is because I need you so I can get this trial over with.

¶12. Cavett also complains that the trial judge told his attorney to "sit down and shut up". This is not an accurate depiction of the record. After Cavett's attorney had interrupted him twice in the same sentence, the judge actually said, "Shut up while I'm talking." Of course, this terminology is not an example of ideal courtroom decorum, but, then, neither is interrupting a judge twice in one sentence.

¶13. Certainly, this Court has acknowledged that the actions of a trial judge can be bad enough to prejudice the jury. *See Waldrop v. State*, 506 So. 2d 273, 276 (Miss. 1987) (trial judge understandably "lost his cool" in front of jury). However, the disputed interactions in the case *sub judice* were limited to arguments held outside the presence of the jury. Therefore, Cavett's argument that the trial judge's demeanor resulted in an unfair trial is without merit.

¶14. Although the judge's conduct in this case did not affect the outcome of the trial, discourteous conduct in the courtroom can have broader ramifications. Canon 3. 3 of the Code of Judicial

Conduct, requires judges to be "patient, dignified, and courteous". How well the judiciary abides by this requirement greatly affects the public perception of the courts. Furthermore, all officers of the court should comport themselves in a manner that instills public trust and confidence in the decisions rendered.

### 3. The trial court's denial of defense counsel's request to admonish.

¶15. Cavett further argues that the trial judge should have granted defense counsel's request to admonish the jury to disregard witness testimony on two occasions. These requests to admonish arose after the trial court sustained defense objections. The trial judge found that, at least with regard to one of the requests, a contemporaneous admonition would have drawn even more attention to the objectionable matter. Furthermore, although the trial judge denied the contemporaneous requests for an admonition, he subsequently gave a written instruction admonishing the jury to disregard all excluded evidence.

¶16. Cavett argues that, when the trial judge sustained the objections and denied the request to admonish the jury, "it can only be presumed that [the jury] considered the incompetent testimony." However, "[a]s this Court has oft-stated: 'Our criminal justice system necessarily proceeds on the premise that jurors take their responsibilities quite seriously,' and this Court 'presume[s] as a matter of institutional imperative that our jurors respect the law as they are instructed by the court.'" *Alexander v. State*, 602 So. 2d 1180, 1183 (Miss. 1992) (quoting *Middlebrook v. State*, 555 So. 2d 1009, 1013 (Miss. 1990)). *See also Hoops v. State*, 681 So. 2d 521, 528-29 (Miss. 1996) (jury is presumed to have followed trial judge's admonition to disregard witness's inappropriate remarks).

¶17. Moreover,

> [i]t is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the mind of the jurors. The jury is presumed to have followed the directions of the trial judge.

*Vickery v. State*, 535 So. 2d 1371, 1380 (Miss. 1988) (citations omitted).

¶18. Cavett's timely objections were sustained. Moreover, at least with regard to the second request of admonition, the trial judge ruled that a contemporaneous admonition would have drawn further attention to the objectionable comment. Subsequently, at the conclusion of the presentation of all evidence, the trial judge gave a written instruction to the jury to disregard such comments. Therefore, this issue is without merit.

### 4. The trial judge's denial of defense's motion for mistrial.

¶19. Cavett next asserts that the trial judge should have granted a mistrial during the State's redirect examination of Calvin Shelton. Shelton was in Cavett's car the night of Brown's murder. He was indicted with Cavett, Stevens, and Strahan, but he was not tried with them. He testified against all of them at trial. On cross-examination, the defense questioned Shelton at length regarding his motives for testifying. During the State's redirect examination of Shelton, the following transpired:

> [ASSISTANT DISTRICT ATTORNEY]: Has either one of these defendants tried to threaten

or intimidate you at any --

[CAVETT'S ATTORNEY]: Your Honor--

[ASSISTANT DISTRICT ATTORNEY]: -- time after the shooting that night?

A. No, ma'am.

Q. Have you ever told Detective Wade or anyone that they did?

A. Yes, ma'am.

Q. Who did you make such a statement to?

A. Detective Wade.

Q. What did you tell Detective Wade that had happened?

A. I told Detective Wade that Glynn [Stevens] and Pat [Cavett] had threatened me.

[STEVENS' ATTORNEY]: May we approach the bench, Your Honor?

THE COURT: You may.

(OFF THE RECORD DISCUSSION AT THE BENCH)

THE COURT: Ladies and gentlemen, let me ask you to please be excused for a few moments while we take up a legal matter.

¶20. Thereafter, a lengthy discussion was had, during which defense counsel argued for a mistrial. The trial judge denied the motion for a mistrial, but allowed the defense attorneys to recross-examine Shelton. The trial judge ruled that the State's line of questioning was improper redirect, but that the defense attorneys had not objected and had allowed the evidence to be elicited.

¶21. The record reflects that Cavett's attorney said "Your Honor" during the State's line of questioning, but did not say anything further. "Unless timely and **specific** objection is made to allegedly improper testimony, the objection is deemed waived and may not be raised on appeal." *Hall v. State*, 691 So. 2d 415, 418 (Miss. 1997) (emphasis added) (quoting *McQuarter v. State*, 574 So. 2d 685, 688 (Miss. 1990)). Moreover, although the trial judge ruled to the contrary, the prosecutor's questions were proper redirect examination.

¶22. That is, "[t]he defense opened the door to the questions asked and the answers given on re-direct." *See Id.* The defense questioned Shelton at length about his motivation to testify in favor of the State. In so doing, the defense opened the door for questions on redirect examination regarding Shelton's motives for testifying against the State (i.e.: he had been threatened to keep his mouth closed).

The trial court has broad discretion in allowing or disallowing redirect examination of witnesses. When "the defense attorney inquires into a subject on cross-examination of the State's witness, the prosecutor on rebuttal is unquestionably entitled to elaborate on the matter."

. . . Because these matters were all "brought out on cross-examination," we find the trial court did not abuse its discretion in allowing redirect examination on the matters.

*Beckwith*, 707 So. 2d at 591 (citations omitted).

¶23. Thus, no specific objection was made as the evidence was being elicited, and the questions were proper. In addition, the defense attorneys were allowed to recross-examine Shelton on this matter. Therefore, Cavett's argument on this point is without merit.

### 5. The State's alleged discovery violation.

¶24. Cavett asserts that a discovery violation occurred when the State's firearms expert testified about stippling on the decedent's arm. Although Cavett does not argue this issue or cite any authority, he contends that this alleged discovery violation also contributed to an unfair trial. Cavett's failure to cite authority precludes consideration on appeal. *See Beckwith*, 707 So. 2d at 597.

¶25. In the alternative, Cavett's argument is without merit, because he clearly failed to follow the proper procedure for combating discovery violations. After all parties had rested their cases, the defense attorneys moved for a portion of the firearms expert's testimony to be struck from the record. They argued that they were unfairly surprised by his testimony as to the cause of the stippling on the decedent's arm. After lengthy discussions, the trial judge noted that the defendants knew the firearms expert was going to testify, and they had his lab report. The trial judge also ruled that the objection should have been made when the allegedly surprising testimony was presented, and denied the defendants' motion to strike portions of the testimony.

¶26. It is well-settled, that a defendant claiming unfair surprise must, at a minimum, request a continuance to consider the previously undisclosed evidence: "Should the defendant fail to request a continuance, he has waived the issue." *Snelson v. State*, 704 So. 2d 452, 458 (Miss. 1997) (quoting *Duplantis v. State*, 644 So. 2d 1235, 1250 (Miss. 1994)).

¶27. Thus, Cavett's argument is procedurally barred for failure to cite authority. Moreover, Cavett did not request a continuance when allegedly surprising information was first brought to light. Therefore, his argument on this point is without merit.

## B. WHETHER THE TRIAL COURT ERRED IN REFUSING TO SEVER?

¶28. Cavett also argues that his trial should have been severed from the trials of the co-defendants Stevens and Strahan. However, prior to trial, Cavett withdrew his motion to sever, and has, therefore, waived this argument. The record reflects the following:

THE COURT: Now we have the motions to sever on Patrick Cavett, Calvin Shelton, Glynn Stevens, and Robert Strahan.

[CAVETT'S ATTORNEY]: I withdraw my motion for severance on Patrick Cavett.

THE COURT: You're withdrawing that motion?

[CAVETT'S ATTORNEY]: Yes, sir, and I'm objecting to the severance of the other two people.

THE COURT: So now we just have the motion to sever on Glynn Stevens and Robert Strahan.

¶29. Furthermore, even if the merits of Cavett's argument were considered, it would fail.

> The trial judge has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence. In *Duckworth v. State*, 477 So.2d 935, 937 (Miss.1985), this Court stated that there are a number of criteria to be used to determine if the denial of a motion for severance is proper. These criteria are whether or not the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion. *Id.* at 937.

*Hawkins v. State*, 538 So. 2d 1204, 1207 (Miss. 1989); *See Gossett v. State*, 660 So. 2d 1285, 1289 (Miss. 1995); *Tillman v. State*, 606 So. 2d 1103, 1106 (Miss. 1992) ("the trial court has the discretion to grant a severance if it is necessary to promote a fair determination of the defendant's guilt or innocence"); *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987); *Price v. State*, 336 So. 2d 1311, 1312 (Miss. 1976); URCCC 9.03; Miss. Code Ann. § 99-15-47 (1994).

¶30. It is noteworthy that the United States Supreme Court has recognized the importance of joint trials in the criminal justice system. *Richardson v. Marsh*, 481 U. S. 200, 209-10 (1987) ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability -- advantages which sometimes operate to the defendant's benefit.").

¶31. Basically, Cavett contends that he was prejudiced by the admission of co-defendant Stevens' statement to the police. The statement was partially redacted to delete all references to Cavett. Clearly, Cavett's confrontation rights were not violated when the trial court conducted a joint trial and admitted the co-defendant's redacted statement. *Richardson*, 481 U.S. at 209-10; *Walker v. State*, 430 So. 2d 418, 421 (Miss. 1983).

¶32. Moreover, a similar "guilt by association" claim was raised in *Gossett v. State*, 660 So 2d 1285 (Miss. 1995). In that case, this Court found that the "balance of the evidence demonstrated that [the co-defendants] separately shot [the victim] implicating them equally in the murder. Accordingly, the trial court did not abuse its discretion in denying either of the co[-]defendants' requests for a severance." *Id.* at 1290. *See also Rigby v. State*, 485 So. 2d 1060, 1061 (Miss. 1986) (quoting *Blanks v. State*, 451 So. 2d 775 (Miss. 1984) ("we found no error in a circuit judge's refusal to grant a severance 'where all the evidence at the trial went to the guilt of both appellants and not to one more than the other.'").

¶33. Cavett withdrew his motion for severance and objected to the severance of the other co-defendants' trials. In addition, Cavett has not demonstrated that any of the evidence exculpated his co-defendants at his expense. He has not demonstrated that the balance of the evidence was tilted. He has not demonstrated any prejudice by the joint trial. The evidence in this case tended to indicate that all three co-defendants fired guns that night. Although the statement of Cavett's co-defendant was admitted, all references to Cavett were carefully deleted therefrom. Therefore, Cavett's argument on this point was previously waived and is also without merit.

**C. WHETHER CAVETT WAS DENIED THE PROTECTION GUARANTEED IN THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT?**

¶34. Cavett's final argument is that statements made by the prosecutor in closing arguments violated the Confrontation Clause of the Sixth Amendment. Co-defendant Stevens had told the police that he went to the Metrocenter that night to steal a car. During the prosecutor's closing arguments, the following transpired:

[ASSISTANT DISTRICT ATTORNEY]: Why [Jason Brown is] not here is because he was at the Metrocenter on a Friday night, minding his own business, leaving that place when these three walked in. When they go out there and spot a car in that parking lot that did not belong to them, but it looked good enough for them that they wanted it.

[CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence presented in Court.

THE COURT: Sustained

[CAVETT'S ATTORNEY]: Move for a mistrial.

THE COURT: Denied.

[ASSISTANT DISTRICT ATTORNEY]: You heard the testimony and evidence. You heard the testimony from this stand where Detective Wade told you that Glynn Stevens said they went to the Metro to steal a car.

[CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence that was presented in court.

THE COURT: Let me see you at the bench a moment, please.

(OFF THE RECORD DISCUSSION AT THE BENCH)

THE COURT: Ladies and gentlemen, let me ask you to please be excused for a couple of moments while we take up a legal matter.

(PROCEEDINGS OUTSIDE THE PRESENCE OF THE JURY.)

[CAVETT'S ATTORNEY]: Your Honor, for the record, I would like for the Court to understand my objection is, as the Court is aware, that [the prosecutor] is getting up in front of the jury on closing and saying that Glynn Stevens said that "they" were going to steal a car. This was the whole point of my objection as to them being allowed to put into evidence anything that had been redacted out of the statement because I was afraid that the State was going to try to get up here at closing and say they intended to steal a car, not just Glynn Stevens.

I know when the Court allowed the State to put in that evidence that the Court said that they just talk about Glynn Stevens. Now they're talking about they. This is a three-defendant trial. A severance was not allowed. I think the State knows that when they sit up there and talk about they, that they are implicating the other two defendants in an auto theft that I argued about when they were trying to get the redacted portions back in evidence.

I'm making an objection and asking the Court, if the Court sustains my objection, to advise the jury to disregard the statements made by the Assistant District Attorney and to further instruct the jury that only Glynn Stevens had the intent to steal a car when he went to Metrocenter.

THE COURT: Response?

[ASSISTANT DISTRICT ATTORNEY]: No response, Your Honor.

THE COURT: All right. I already sustained the objection. The motion to advise the jury about what it is they ought to -- who they ought to attribute it to and all that stuff I think serves to call more attention to what happened than to benefit you by having me give that incautionary advice. So I'm going to decline your invitation to have the Court do that.

I'm going to advise you, [Assistant District Attorney], that we've been here four days. It would be tragic for you to do something at the end of this case that compels me to have to declare a mistrial. So please stick to commenting on what you know was allowed by the Court and what the testimony was and the evidence that was presented during the course of the trial. Don't do anything that makes us have to declare a mistrial after us having been here for four days.

Do you have something to add?

¶35. Cavett asserts that the trial judge should have granted the motions for mistrial. Here, the trial judge sustained defense counsel's objection. Furthermore, at the conclusion of the testimony, the trial judge instructed the jury to "disregard all evidence which was excluded by the Court from consideration during the course of the trial." The jury was also instructed that "[a]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence." The law presumes that the jury followed these instructions. *Vickery v. State*, 535 So. 2d 1371, 1380 (Miss. 1988)

*¶36.* In addition, "[a] trial judge is in a better position to assess the effect of incidents which may require a mistrial than is this Court on appeal, and this Court will not reverse on the failure to grant a mistrial unless the trial judge abused his discretion in overruling the motion for a mistrial." *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997) (citing *Walker v. State*, 671 So.2d 581, 622 (Miss.1995); *Chase v. State*, 645 So.2d 829, 848-49 (Miss.1994)).

¶37. It is evident that the trial judge carefully considered the prejudicial effect, if any, of the prosecutor's remarks. He noted that any further mention of the incident might draw more attention to the problem, rather than correcting it. He also cautioned the prosecutor not to make similar comments in the future. Later, he instructed the jury in writing that the attorneys' comments were not evidence. Under the circumstances, the trial judge did not abuse his discretion by denying the motion for a mistrial. Therefore, this assignment of error is without merit.

### III. CONCLUSION

¶38. The issues raised by Cavett on appeal are without merit. The judgment of the trial court is affirmed.

¶39. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE**

**CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND McRAE, JJ.**

**SULLIVAN, PRESIDING JUSTICE, DISSENTING:**

¶40. Both the record in this case and the relevant case law of this State support my conclusion that due to the improper comments during closing argument by the prosecution, Cavett did not receive a fair trial. Both his constitutional right to confront his accusers and his right against self incrimination were violated. It is for this reason that I respectfully dissent.

¶41. Cavett invoked his constitutional right not to testify at trial. Furthermore the only co-defendant that gave a statement to the police that referred to the intent to go to Metrocenter and steal a car came from co-defendant Stevens. None of the three co-defendants testified at the joint trial. Cavett withdrew his motion for severance and objected to the severance of the other co-defendant's request for a severance. Consequently, I agree Cavett cannot now complain that his prior motion for severance was denied. However, Cavett does have a legitimate expectation that any pre-trial statements made to police by co-defendant Stevens which are introduced at trial cannot be used to implicate him since he was unable to question Stevens at trial.

### CAVETT'S CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSERS

¶42. The authority for this right and what it means was explained by in the dissent of *Wilcher v. State*, 697 So. 2d 1087 (Miss. 1997) (Sullivan, P.J., dissenting) as follows:

> In *Crapps v. State*, 221 So.2d 722, 723 (Miss.1969), this Court stated that the Sixth Amendment to the United States Constitution established the right to confrontation. In *Hubbard v. State,* 437 So.2d 430, 433-34 (Miss.1983), this Court stated that the Mississippi Constitution, Article 3, Section 26, grants and guarantees a criminal defendant the right to confront witnesses against him. *See also Stromas v. State*, 618 So.2d 116, 121 (Miss.1993). The right of confrontation "extends to and includes the right to fully cross- examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." *Myers v. State*, 296 So.2d 695, 700 (Miss.1974).

*Wilcher*, 697 So.2d at 1116. This Court has further said:

> [I]n holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal."

*Earl v. State*, 672 So. 2d 1240, 1242 (Miss. 1996) (*quoting **Barber v. Page**, 390 U.S. 719, 722*

[(1968)](#).

¶43. The pre-trial statement by co-defendant Stevens introduced at the trial had been properly redacted regarding Cavett. This Court has approved such a procedure in lieu of granting a severance of co-defendants. ***Walker v. State***, 430 So. 2d 418, 421 (Miss. 1983) (holding that "the trial judge should require the state to elect between a joint trial in which the statement is excluded, a joint trial in which the statement is admitted, but the portion implicating the accused is deleted, or agree to a severance"). However, the prosecution was allowed to use its closing argument to unlawfully put before the jury information that was otherwise not permitted in violation of Cavett's right to confront his accusers. The relevant part of the record which occurred during closing argument is as follows:

> [ASSISTANT DISTRICT ATTORNEY]: Why [Jason Brown is] not here is because he was at the Metrocenter on a Friday night, minding his own business, leaving that place when these ***three*** walked in. When ***they*** go out there and spot a car in that parking lot that did not belong to ***them***, but it looked good enough for them that they wanted it.

> [CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence presented in Court.

> The COURT: Sustained.

> [CAVETT'S ATTORNEY]: Move for a mistrial.

> THE COURT: Denied.

> [ASSISTANT DISTRICT ATTORNEY]: You heard the testimony and evidence. You heard the testimony from this stand where Detective Wade told you that Glynn Stevens said ***they*** went to the Metro to steal a car.

> [CAVETT'S ATTORNEY]: Objection, Your Honor. Outside the evidence that was presented in court.

> THE COURT: Let me see you at the bench a moment, please.

> (OFF THE RECORD DISCUSSION AT THE BENCH)

> THE COURT: Ladies and gentlemen, let me ask you to please be excused for a couple of moments while we take up a legal matter.

> (PROCEEDINGS OUTSIDE THE PRESENCE OF THE JURY.)

> [CAVETT'S ATTORNEY]: Your Honor, for the record, I would like for the Court to understand my objection is, as the Court is aware, that [the prosecutor] is getting up in front of the jury on closing and saying that Glynn Stevens said that "they" were going to steal a car. This was the whole point of my objection as to them being allowed to put into evidence anything that had been redacted out of the statement because I was afraid that the State was going to try to get up here at closing and say they intended to steal a car, not just Glynn Stevens.

> I know when the Court allowed the State to put in that evidence that the Court said that they just talk about Glynn Stevens. Now they're talking about they. This is a three-defendant trial. A

severance was not allowed. I think the State knows that when they sit up there and talk about they, that they are implicating the other two defendants in an auto theft that I argued about when they were trying to get the redacted portions back in evidence.

I'm making an objection and asking the Court, if the Court sustains my objection, to advise the jury to disregard the statements made by the Assistant District Attorney and to further instruct the jury that only Glynn Stevens had the intent to steal a car when he went to Metrocenter.

THE COURT: Response?

[ASSISTANT DISTRICT ATTORNEY]: No response, Your Honor.

THE COURT: All right. I already sustained the objection. The motion to advise the jury about what it is they ought to -- who they ought to attribute it to and all that stuff I think serves to call more attention to what happened than to benefit you by having me give that incautionary advice. So I'm going to decline your invitation to have the Court do that.

I'm going to advise you, [Assistant District Attorney], that we've been here four days. It would be tragic for you to do something at the end of the case that compels me to have to declare a mistrial after us having been here for four days.

Do you have something to add?

[STRAHAN'S ATTORNEY]: Yes, Your Honor. I want to join in the objection and Strahan moves for a mistrial.

[CAVETT'S ATTORNEY]: So does Cavett, Your Honor.

THE COURT: Motion for a mistrial is denied. Bring the jury back in.

¶44. The prosecution did through the back door what it could not do directly, namely attribute the motive of stealing a car to all three co-defendants when only Stevens, by way of his pre-trial statement to the police, stated that he had this intent. The State purposely attributed a motive to kill to Cavett which was not based on evidence introduced during the trial. Up until these statements were made, the testimony concerning Cavett was that he went to Metrocenter to buy some shoes, not to steal a car. This prosecutorial misconduct should not be overlooked by this Court, for it does violate Cavett's constitutional right to confront his accuser, co-defendant Stevens. As already stated, none of the co-defendants testified at trial. The prosecutor's comments that referred to all three co-defendant's intent to go to Metrocenter to steal a car did have a prejudicial effect on Cavett. Even if it was not an abuse of discretion for the trial judge to overrule the motion for a mistrial, the trial judge was in error when he chose not to even admonish the jury contemporaneously that the Assistant District Attorney's improper comments should be disregarded. The conviction of Cavett should be reversed and remanded for a new trial.

## CAVETT'S CONSTITUTIONAL RIGHT TO REMAIN SILENT

¶45. A defendant has a constitutional right not to testify at trial or have his silence anytime after his arrest be used against him. *Carr v. State*, 655 So. 2d 824, 845 (Miss. 1995). "'Direct comment on a

defendant's failure to testify is constitutionally impermissible and constitutes error.'" ***Taylor v. State***, 672 So. 2d 1246, 1280 (Miss. 1996) (Sullivan, P.J., concurring in part and dissenting in part) (*quoting* ***Ladner v. State***, 584 So. 2d 743, 754 (Miss. 1991)). "'Prosecutors are also forbidden from referring to a defendant's failure to testify 'by innuendo and insinuation.'"" ***Taylor***, 672 So. 2d at 1280 (*quoting* ***Jimpson v. State***, 532 So.2d 985, 991 (Miss.1988)).

¶46. It is undisputed that Cavett did not testify at trial. During closing argument the following comments were made:

> [ASSISTANT DISTRICT ATTORNEY]: . . . We see all the bullets to that car and you'll have the photographs to see where they were shooting at the driver's side of the car, the bullet holes. You'll see how they went through and across the back seat there and went out where the police officer recovered them there in the door on the opposite side of the car. You'll have those photographs to see. And we know Jason Brown was sitting there with his window up. Mike Childress explained that to you and you will see from the photographs where he pointed out that even with the broken glass you can tell the window was up because of the glass and the way it was still there at the very base of it. ***Why? Why? What did the defendants say?***

> [STRAHAN'S ATTORNEY]: Your Honor, we're going to object to that. It's improper, what the defendants say. It's improper and move for a mistrial.

> THE COURT: Overruled. Motion denied.

¶47. The majority fails to address this issue, apparently because Cavett 's attorney did not object to the improper comment after Strahan's attorney had objected and the motion for a mistrial was denied and furthermore this issue was not raised by Cavett on appeal. In view that this error affects the fundamental right not to testify, this Court has held that even if no contemporaneous objection was made, this Court still may reverse. *See* ***Alexander v. State***, 610 So. 2d 320 (Miss. 1992); ***Griffin v. State***, 557 So. 2d 542, 552 (Miss. 1990).

¶48. The majority in ***Strahan v. State***, addressing this exact language in the same joint trial, concedes this a very close issue, which involves a fundamental right and cites to ***Whigham v. State***, 611 So. 2d 988, 995 (Miss. 1992) for the premise that "[t]he right would be eviscerated if the government were free to make invidious reference when accused chose not to testify." Nevertheless, the majority agrees with the State that the prosecutor was not commenting on the defendant's silence, but, rather, was commenting upon the evidence, namely the statements made to police by co-defendants Cavett and Stevens. I disagree. The comment "Why? Why? What did the defendants say?" is a direct comment on Cavett's silence at trial and is constitutionally impermissible and constitutes impermissible error that warrants reversal of Cavett's conviction. Although references were made to both Stevens and Cavett's statements to the police earlier in the closing argument, the comments made prior to the reference about what the defendants said all related to the victim, Jason Brown. There is no other reasonable construction of the language used by the district attorney other than a direct comment on Cavett's invocation of his constitutional right to refuse to testify at trial. ***Ladner v. State***, 584 So. 2d 743, 754 (Miss. 1991). At the very least it could "reasonably be construed by a jury as a comment on the defendant's failure to testify." ***Griffin***, 557 So. 2d at 552. This particular error affecting such a fundamental right, even when a cautionary instruction is given to the jury prior to deliberations, is incurable. *See* ***Livingston v. State***, 525 So. 2d 1300, 1307 (Miss. 1988); ***Peterson v.***

*State*, 357 So. 2d 113, 115 (Miss. 1978).

¶49. "We have never demanded the State provide a perfect trial, but we do require a fair one." *Taylor v. State*, 672 So. 2d 1246, 1281 (Miss. 1996) (Sullivan, P.J. concurring in part and dissenting in part). Both Cavett's constitutional right to confront his accusers and his right to remain silent were violated during the assistant district attorney's closing argument. Therefore, Cavett was not given a fair trial that comports with his constitutional rights that our forefathers thought so important. For both of these reasons, I respectfully dissent.

**BANKS AND McRAE, JJ., JOIN THIS OPINION.**