806 So.2d 1151 (2002)
Ricky D. NEAL and Antonio Neal a/k/a Antonio L. Neal a/k/a Deano, Appellants
v.
STATE of Mississippi, Appellee.
No. 2000-KA-00090-COA.
Court of Appeals of Mississippi.
January 29, 2002.
*1153 Raymond L. Wong, Cleveland, Aelicia L. Thomas, Attorneys for Appellants.
Office of the Attorney General, by Charles W. Maris Jr., Jackson, Attorney for Appellee.
Before SOUTHWICK, P.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. Ricky and Antonio Neal were convicted of conspiracy to commit burglary in the Bolivar County Circuit Court, Honorable *1154 John L. Hatcher presiding. Both men were sentenced to five years in the custody of the Mississippi Department of Corrections. Ricky Neal was also fined $5000. Ricky and Antonio have appealed their conviction and come now to this Court bringing several issues:
1. WHETHER THE STATE'S USE OF REDACTED INCULPATORY STATEMENT OF NON-TESTIFYING CO-DEFENDANT IS REVERSIBLE ERROR;
2. WHETHER THE PROSECUTION FAILED TO ESTABLISH THE CORPUS DELICTI OF THE CRIME OF CONSPIRACY;
3. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELANT'S PEREMPTORY STRIKE AGAINST JUROR # 3 (EUGENE K. OWEN) AFTER HAVING PROVIDED A RACE NEUTRAL REASON;
4. WHETHER THE TRIAL COURT ERRED IN FAILING TO DETERMINE IF JUROR # 11 (DAVID BURCHFIELD) WAS RELATED TO OFFICER TIM BURCHFIELD WITH THE CLEVELAND POLICE DEPARTMENT AFTER THIS JUROR WAS SELECTED AS A TRIAL JUROR;
5. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE INTEGRITY OF THE VERDICT WAS QUESTIONABLE;
6. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO A DISCOVERY VIOLATION PURSUANT TO RULE 9.04, URCCC, AS TO EXHIBITS S-2A AND S-2B (PAIR OF PLIERS AND A PIECE OF PIPE) AND TO THE ADMISSION OF THESE EXHIBITS INTO EVIDENCE BASED ON SAID VIOLATION;
7. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELANT'S MOTION TO SUPPRESS THE SECOND STATEMENT OF THE APPELLANT DUE TO THE INVESTIGATOR'S FAILURE TO INFORM THE APPELLANT OF HIS MIRANDA WARNINGS PRIOR TO ELICITING STATEMENTS FROM THE APPELLANT;
8. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE DUE TO THE STATE OF MISSISSIPPI HAVING FAILED TO PROVE A PRIMA FACIE CASE AS CHARGED IN THE INDICTMENT; AND
9. WHETHER THE TRIAL COURT COMMITTED ERROR BY NOT GIVING A CIRCUMSTANTIAL EVIDENCE INSTRUCTION AND A TWO-THEORY INSTRUCTION TO THE JURY.

STATEMENT OF FACTS
¶ 2. On June 9, 1999, Tim Tindle and Steven Ellington, Cleveland, Mississippi police officers, were on duty in downtown Cleveland doing surveillance. There had been a rash of burglaries in downtown Cleveland, and the officers were there to provide a new measure of police protection. The two officers were parked in unmarked cars.
¶ 3. Around four o'clock that morning, the two officers observed a small blue car driving very slowly around the back of some buildings. There were two men in the car, who seemed to be observing the buildings in downtown. The car stopped near the rear of Billy Perry's pawn shop, the passenger got out of the car, and the car then drove away. The man walked out *1155 of sight into an alley, and a few seconds later, came back into view. The officers testified the passenger adjusted his hat, and it was then that the officers noticed the passenger was carrying a long, pipelike object. One of the officers opened his car door, causing his interior light to turn on, and the passenger began to run. The officers radioed in a description of the blue car and then drove in the direction the passenger was running.
¶ 4. Officer Wayne Vick was able to stop the blue car, and the driver was Antonio Neal. Officers Tindle and Ellington found Ricky Neal three blocks away from where the passenger had been dropped off. When Ricky was stopped, the officers described him as sweaty, wet, dirty, and out of breath. Ricky gave conflicting statements on what he was doing that night, and after a search, a pair of pliers and a pipe were found in the alley the passenger had run up. After being explained his rights, Antonio Neal told the officers he had been out drinking with "someone," and that same person told Antonio to let him out behind the pawn shop so he could burglarize it. Antonio told the police he was to make the block and pick his passenger up, but if something went wrong, Antonio was to meet him at the Jitney Jungle. Antonio and Ricky were co-defendants at trial, and were both found guilty on November 9, 1999. They were sentenced to five years each, and Ricky was fined $5000.

STANDARD OF REVIEW
¶ 5. A motion for a directed verdict and a motion for a judgment notwithstanding the verdict challenge the sufficiency of the evidence. The standard of review for a challenge to the sufficiency of the evidence is stated in McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citations omitted):
In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence ... consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
¶ 6. "Evidentiary rulings are within the broad discretion of the trial court and will not be reversed absent an abuse of discretion." Dobbs v. State, 726 So.2d 1267 (¶ 25) (Miss.Ct.App.1998).

ANALYSIS

1. WHETHER THE STATE'S USE OF REDACTED INCULPATORY STATEMENT OF NON-TESTIFYING CO-DEFENDANT IS REVERSIBLE ERROR.
¶ 7. This issue was raised by Ricky Neal in response to the trial court's decision to allow the State to put Antonio Neal's confession into evidence when Antonio did not testify. During the State's case in chief, Officer Bingham, one of the investigating officers, testified as to the contents of a confession Antonio Neal gave to him on the day the two men were arrested. Under instruction from the trial court, Bingham did not refer directly to Ricky Neal; instead, Bingham substituted the term "subject" in all of the places where Antonio referred to Ricky. Ricky claims this violated his Sixth Amendment right to confront the witnesses offered against him, and bases his argument on *1156 cases such as Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). The State counters by arguing that this case is distinguishable from those cases, and that Ricky's failure to request a severance prevents him from citing these cases.
¶ 8. In the Bruton case, the United States Supreme Court dealt with a set of facts in which two co-defendants were on trial for armed postal robbery, and one of them, Evans, had made a confession to a postal inspector. Bruton, 391 U.S. at 124, 88 S.Ct. 1620. Evans' confession was offered into evidence, and the two men were convicted. Id. The two men appealed and while the courts agreed Evans' confession could be used against Evans, there was a great deal of question as to whether the confession could be admitted against his co-defendant. The Supreme Court held:
We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.
Id. at 126, 88 S.Ct. 1620.
¶ 9. The scope of this area of the law was narrowed in 1987 by the case of Richardson v. Marsh, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In the Richardson case, the confession of a non-testifying co-defendant, Williams, was offered into evidence by the State. However, all references to the existence of Marsh, the non-confessing co-defendant, was completely redacted. Id. at 203, 107 S.Ct. 1702. The Supreme Court held this was not a violation of the co-defendant's Sixth Amendment rights because in Bruton, the confession was incriminating on its face, while in Richardson the confession was incriminating only when linked with other evidence. Id. at 208, 107 S.Ct. 1702. The court stated "[w]e hold that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Id. at 211, 107 S.Ct. 1702.
¶ 10. The question of redactions that do not sufficiently delete any reference to the co-defendant's existence was dealt with recently in the case of Gray v. Maryland, 523 U.S. 185, 194, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). The redactions in the Gray case simply deleted the co-defendant's name from the statement leaving blanks or places where the word "delete" was found. Id. at 192, 118 S.Ct. 1151. The Supreme Court held:
Nonetheless, as we have said, we believe that, considered as a class, redactions that replace a proper name with an obvious blank, the word "delete," a symbol, or similarly notify the jury that a name has been deleted are similar enough to Bruton's unredacted confessions as to warrant the same legal result.
Id. at 195, 118 S.Ct. 1151. The court differentiated its holding in Gray from its holding in Richardson by pointing out the type of inference which can be drawn from the confessions. Id. at 196, 118 S.Ct. 1151. It pointed out that the inferences in Richardson involved statements which were incriminating only when they are linked to other evidence. Id. The difference is that the inferences in Gray were such that the statements, "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury could ordinarily make immediately, even were the confession the very first item introduced at trial." Id.
*1157 ¶ 11. After considering the arguments and the case law, this Court has no choice but to reverse this case as it applies to Ricky Neal, and remand for a new trial without the confession of Antonio Neal. The statements made by Officer Bingham clearly fall into the type of statements which the Supreme Court warned of in Gray. The statements specifically state that Antonio Neal picked up "a subject and that he dropped off "a subject" on the night in question. These statements refer directly to a person, and because there were only two people on trial for conspiracy, they obviously refer to Ricky Neal.
¶ 12. The State bases its main argument on the case of Cavett v. State, 717 So.2d 722 (¶ 28) (Miss.1998), where Cavett sought to have his conviction overturned by arguing he should have been allowed a severance, after he had withdrawn a motion to sever prior to trial. In Cavett, a confession of a non-testifying co-defendant was allowed into evidence, and the Mississippi Supreme Court held that this did not violate his confrontation rights. Cavett, 717 So.2d at (¶ 31). Cavett is distinguishable from the case at hand because there the court ruled that the redactions were done in such a way as to delete all references to Cavett. Id. at (¶ 31). In addition, there were three co-defendants in Cavett. Therefore, any reference made in the confession to any person was not obviously about a certain person because there were more than two defendants.
¶ 13. As we stated above, the redactions in Antonio Neal's confession were made in such a way as to cause the confession to fall into the class of confessions barred by Gray v. Maryland. For this reason, we reverse and remand Ricky Neal's case for a new trial to be held without the confession of Antonio Neal. Because we are reversing and remanding for new trial as to Ricky Neal on these grounds, it is only necessary for us to examine the rest of the issues as they apply to Antonio Neal.

2. WHETHER THE PROSECUTION FAILED TO ESTABLISH THE CORPUS DELICTI OF THE CRIME OF CONSPIRACY.
¶ 14. In raising this issue, Antonio Neal claims the State failed to prove the corpus delicti, or the body of the crime of conspiracy to commit burglary. Antonio claims the evidence was insufficient to prove he was guilty of conspiracy. In dealing with conspiracy, the Mississippi Supreme Court held:
For there to be a conspiracy, there must be a recognition on the part of the conspirators that they are entering into a common plan and knowingly intend to further its common purposes. The `conspiracy agreement need not be formal or express, but it may be inferred from the circumstances, particularly by declarations, acts and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant's membership in it, may be proved entirely by circumstantial evidence.'
Harris v. State, 731 So.2d 1125 (¶ 42) (Miss.1999) (quoting Franklin v. State, 676 So.2d 287, 288 (Miss.1996)).
¶ 15. In examining whether the evidence was sufficient to support a conviction, this Court is to view the evidence in the light most favorable to the State, grant the State the benefit of all favorable inferences, and reverse when fair minded jurors could only find the defendant not guilty. McClain, 625 So.2d at 778. There is a great deal of evidence which points toward Antonio's guilt.
¶ 16. Antonio Neal admitted to dropping a person off at a place Neal knew the person was going to burglarize. Antonio Neal admitted he and his passenger also *1158 had a plan for a pick up after the burglary. In addition to his confession, there is the fact that Officer Ellington was an eyewitness who testified to seeing a blue car drop off a passenger who had a pipe-like object. It was later determined that Antonio Neal was driving the car. Based on the facts of what happened on the night in question, and the inferences which can be drawn from them, it is reasonable to believe fair minded jurors could find Antonio Neal guilty. Id. Therefore, we affirm.

3. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S PEREMPTORY STRIKE AGAINST JUROR # 3 (EUGENE K. OWEN) AFTER HAVING PROVIDED A RACE NEUTRAL REASON.
¶ 17. Antonio brings this issue challenging the denial of the peremptory strike based on racial considerations in violation of the prohibitions set out in Batson v. Kentucky, 476 U.S. 79, 96-97, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The Batson decision prohibited the exercise of peremptory challenges to remove jurors if (a) the reasons offered for exercising the such strikes were based on considerations related to race on their face, or (b) the reasons offered, though facially race-neutral, were seen by the trial court as being pretextual to disguise a hidden raciallybased motivation to exclude the challenged members from the jury. Id. at 97-98, 106 S.Ct. 1712.
¶ 18. Following the Batson holding,
once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination."

Purkett v. Elem, 514 U.S. 765, 768-769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (citing Hernandez v. New York, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)).
¶ 19. During review, this Court must first determine that a prima facie case of improper utilization of peremptory challenges has been met by the objecting party, the State in the case sub judice. Stewart v. State, 662 So.2d 552, 558 (Miss. 1995). A thorough review of the record shows that this burden has indeed been met by the State. The State showed that the jury members who were challenged were all members of the race different from that of the defendant. Having determined the prima facie case has been met by the State, we then must review the race-neutral reasons provided in rebuttal by Neal's counsel, first determining if the reasoning is facially valid and then determining if the reasoning has pretexts for purposeful discrimination. Purkett, 514 U.S. at 768, 115 S.Ct. 1769. Reiterating, the standard of review is abuse of discretion; the trial judge's decision will not be overruled unless it is found to be clearly erroneous. Florence v. State, 786 So.2d 409, 415 (¶ 19) (Miss.Ct.App.2000).
¶ 20. The race-neutral reason offered by Antonio supporting his challenge of juror number three was denied. Specifically, Antonio wanted to strike the juror because he is a professor at Delta State University and Antonio was allegedly involved in a felonious altercation with students from the University. The trial court stated that there was no basis for the challenge. Antonio offered no specific evidence to support this basis and furthermore, *1159 the district attorney's office had no prior knowledge of any altercation.
¶ 21. After a review of the facts and the law, we believe the trial court did not act erroneously in denying Antonio's use of his challenge. There is nothing about the trial court's ruling which is clearly erroneous, and we affirm the trial court's holding on this challenge.

4. WHETHER THE TRIAL COURT ERRED IN FAILING TO DETERMINE IF JUROR # 11 (DAVID BURCHFIELD) WAS RELATED TO OFFICER TIM BURCHFIELD WITH THE CLEVELAND POLICE DEPARTMENT AFTER THIS JUROR WAS SELECTED AS A TRIAL JUROR.
¶ 22. Antonio appeals the trial court's refusal to allow him to question one of the jurors after the jury had already been impaneled. Antonio believed the juror was somehow related to an officer in the Cleveland police department, and wanted a chance to question him to see if the juror had somehow lied during voir dire. The State contends that no question concerning relationships to police officers was ever posed to the prospective jury members and therefore venireman Burchfield could not have lied.
¶ 23. The voir dire in question transcribed as follows:
MS. THOMAS [COUNSEL FOR ANTONIO]: Your Honor, we would move that juror number [eight] be brought back into chambers for questioning, as he's failed to notify the court as to whether or not he is related to officer Tim Burchfield, who is an officer with the Cleveland Police Department.
MR. ROSSI [ASSISTANT DISTRICT ATTORNEY]: The response would be, Your honor, that no question was ever asked of the jury about whether or not they were related to any law enforcement officers, and so the defense is now closed from raising this issue. They certainly had the opportunity to ask if anyone was related to or involved in law enforcement and they did not ask that question.
THE COURT: All right. Who are you saying asked the question?
MS. THOMAS: I thought the question was brought up or mentioned during the voir dire that was being
THE COURT: One of the jurors, as I recall, voluntarily submitted that information but not pursuant to any question.
MS. THOMAS: Yes, sir.
¶ 24. The State's contention is correct. No specific question was ever asked by either defense counsel if any potential jurors were related to law enforcement. Several jurors volunteered such information, but the question was never presented to them in such a way. Antonio asserts that his co-defendant's counsel, Mr. Wong, made a statement that the veniremen should respond on their own because they "do [not] know everybody." Furthermore, Antonio relies on this statement as an opportunity for further responses and claims error for Mr. Burchfield failing to provide an answer.
¶ 25. The Mississippi Supreme Court held in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978) that
when a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion for a new trail determine wether the question propounded to the juror was (1) relevant to the voir dire examination; (2) whether it was unambiguous; and (3) whether the *1160 juror had substantial knowledge of the information sought to be elicited.
¶ 26. If the above mentioned situation existed and the harm resulted, this Court must reverse. Id. However, the case at bar is simply not the same situation as Odom. Although the question is a relevant one, the potential juror was not directly asked such question. Furthermore, the mere suggestion for volunteering answers by Mr. Wong is certainly ambiguous and is not persuasive to this Court. Additionally, Mississippi law specifically states that a party waives its chance to object to the makeup of the jury if it fails to do so by the time the jury is impaneled. McNeal v. State, 617 So.2d 999, 1003 (Miss.1993).
¶ 27. This contention is without merit.

5. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL WHEN THE INTEGRITY OF THE VERDICT WAS QUESTIONABLE.
¶ 28. At trial, the jury had a question during deliberation about convicting one defendant but not the other and submitted it to the court. After consulting defense counsel and receiving no objections, the court referred the jury to the instruction concerning the form of the verdict. Shortly thereafter, the jury returned a guilty verdict for each defendant. Defense counsel requested a polling and it was determined that the verdict was not in fact unanimous. The judge instructed the jury that all twelve members must vote to convict or acquit or a hung jury would result. The defense made no objections and did not request a mistrial. The judge then sent the jury back for further deliberations. After thirty minutes, the judge questioned the jury, to which the jury responded an unanimous verdict had not been reached but that it was making forward progress. Again, the defense made no objections and did not request a mistrial. The judge then sent the jury back for further deliberations, after which the jury returned a guilty verdict for each defendant.
¶ 29. However, in each of these instances Antonio failed to object to the trial court's decision. A contemporaneous objection must be made in order to preserve the trial court's error on appeal. Evans v. State, 725 So.2d 613, 670 (¶ 241) (Miss.1997). Since Antonio failed to do this, we cannot address these issues on appeal. Sanders v. State, 786 So.2d 1078 (¶ 10) (Miss.Ct.App.2001).

6. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S OBJECTION TO A DISCOVERY VIOLATION PURSUANT TO RULE 9.04, URCCC, AS TO EXHIBITS S-2A AND S-2B (PAIR OF PLIERS AND A PIECE OF PIPE) AND TO THE ADMISSION OF THESE EXHIBITS INTO EVIDENCE BASED ON SAID VIOLATION.
¶ 30. This issue centers around the State producing the pipe and pliers that Ricky Neal was allegedly going to use to commit burglaries on the night in question. The pipe and pliers were found by the investigating officers in an area which it was believed Ricky ran through. Ricky and Antonio both argue that neither the pipe nor the pliers were properly produced during discovery. The State counters by pointing out that the appellants were given a copy of Officer Ellington's testimony in which Ellington stated he had recovered the pipe and the pliers. Because of this, the State argues Antonio knew of the existence of these articles and simply failed to ask for them.
*1161 ¶ 31. It should be noted that Antonio Neal did not object on discovery violation grounds when Officer Ellington began to testify about the pipe and pliers, nor did he join in Ricky Neal's discovery objection. In fact, the only objection Antonio Neal made regarding the pipe and pliers was that a sufficient foundation, linking the two objects with either of the parties, was not laid. Because Antonio did not make a contemporaneous objection to the pipe and pliers being discovery violations, then the matter was not properly preserved for appeal. Sanders, 786 So.2d at ¶ 10. Therefore, Antonio Neal cannot claim a discovery violation, and the only issue he can raise here is whether a sufficient foundation was laid proving the object's relevance.
¶ 32. In regard to whether the two objects were relevant evidence, the testimony indicated the passenger in the blue car was carrying a pipe-like object. The testimony also indicated that Antonio Neal was found to be the driver of the blue car. These facts, coupled with the abuse of discretion standard of review this Court applies to a trial court's decision to allow the entrance of evidence, causes this Court to affirm. Dobbs, 726 So.2d at (¶ 25). There was no abuse of discretion by the trial court in this matter, and for this reason, we affirm.

7. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS THE SECOND STATEMENT OF THE APPELLANT DUE TO THE INVESTIGATOR'S FAILURE TO INFORM THE APPELLANT OF HIS MIRANDA WARNINGS PRIOR TO ELICITING STATEMENTS FROM THE APPELLANT.
¶ 33. In this issue, Antonio challenges the voluntariness of the statements he made to the police officers regarding his actions on the night in question. Antonio admits his rights were properly read to him before he made his first statement, but he argues his second statement was involuntary because he was not advised of his rights a second time. The State counters by pointing out the lack of authority cited by Antonio, and also by arguing that the Miranda warnings given for the first statement was still in effect when Antonio gave the second statement forty minutes later.
¶ 34. Antonio has failed to support any of his arguments with case authority. Antonio did cite to the case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); however, he did so simply to point out that Miranda warnings only come into play if one is in custody. Antonio did not cite this case in support of any of his arguments. It is well known that failure to cite case law in support of one's arguments acts as a procedural bar. Ratcliff v. State, 752 So.2d 435 (¶ 7) (Miss.Ct.App.1999) (citing Hewlett v. State, 607 So.2d 1097, 1107 (Miss.1992)). Because no case law was cited by Antonio in support of his arguments, this Court is barred from considering them.

8. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE DUE TO THE STATE OF MISSISSIPPI HAVING FAILED TO PROVE A PRIMA FACIE CASE AS CHARGED IN THE INDICTMENT.
¶ 35. Antonio Neal also raised this issue in his brief, claiming that there was no way reasonable minded jurors could have found him guilty. However, Antonio failed to offer a motion for a new trial, and thus is prevented from challenging *1162 the weight of the evidence here on appeal. Hughey v. State, 729 So.2d 828 (¶ 6) (Miss.Ct.App.1998). This is a matter which the trial judge must decide first, before any appeal is taken, and since Antonio failed to move for a new trial, he is barred from raising this issue here. Id.

CONCLUSION
¶ 36. Because the trial court erred in allowing the confession of a non-testifying co-defendant into evidence, Ricky Neal's conviction is reversed and remanded for a new trial without Antonio Neal's confession. However, the trial court did not err by finding the prosecution had proven the corpus delicti of the crime of conspiracy against Antonio Neal. We also hold that Antonio Neal failed to preserve any supposed error in the denial of his peremptory strikes, his desire to question one of the jurors after the jury was impaneled, and the integrity of the verdict. Antonio Neal also failed to object to any discovery violation, and the relevancy of the pliers and pipe was proven. Antonio Neal also failed to cite any case law in his Miranda issue, and his failure to move for a new trial prevents him from questioning the weight of the evidence. Therefore, we affirm.
¶ 37. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF RICKY NEAL IS HEREBY REVERSED AND REMANDED FOR A NEW TRIAL WITHOUT THE CONFESSION OF ANTONIO NEAL. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT OF CONVICTION OF ANTONIO NEAL OF CONSPIRACY TO COMMIT BURGLARY AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. SENTENCE IMPOSED SHALL RUN CONSECUTIVELY TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, AND CHANDLER, JJ., CONCUR. BRANTLEY, J., NOT PARTICIPATING.