CHANDLER, J.,
for the Court.
¶ 1. Joseph Antwan Glenn, Crystal Daniels, and Gregory Smith were each convicted in the Circuit Court of Bolivar County for one count of conspiracy to commit armed robbery and a second count of attempted armed robbery. The circuit court sentenced each of them to five years on the conspiracy conviction and twenty years on the attempt conviction, with the sentences to run consecutively and without eligibility for parole. Each of them now appeals his or her convictions.
¶2. Glenn argues that: (1) the circuit court erred by denying his motion for a new trial, and (2) the circuit court erred by denying his motion for a directed verdict *151 and his motion for judgment notwithstanding the verdict (JNOV).
¶ 3. Daniels argues that: (1) the indictment was defective for not specifying the overt act that the State claimed constituted attempt; (2) the circuit court erred by denying her motion for JNOV and her motion for a new trial; and (3) she received ineffective assistance of counsel at trial.
¶ 4. Smith argues that: (1) the evidence was insufficient to support the verdict, and (2) the verdict was against the overwhelming weight of the evidence.
¶ 5. Finding no error, we affirm.
FACTS
¶ 6. On July 8, 2004, three individuals entered and attempted to rob the Cleveland State Bank in Merigold, Mississippi. Two of the individuals were male, and they were wearing long black wigs and female clothing. The third individual was a female, and she was dressed as a male. Two of them were carrying backpacks. The bank’s security guard, Donnell Hogan, was outside taking a smoke break when the three of them walked into the bank. He said that he noticed the individuals because they looked suspicious, and he followed them into the bank.
¶ 7. Inside the bank, the three individuals initially went to the area where the security guard usually stood. Then, one of the males, who was later identified as another co-defendant, Lewis Green,[1] approached the window of Mary Ann Tribble, one of the bank’s tellers. Green inquired about opening a checking account. When Tribble asked Green for identification, he said he did not have any, and he asked the female, who was later identified as Daniels, whether he had any identification in the car. At the trial, Tribble testified that Daniels was constantly moving back and forth “like she had ants in her pants.” Tribble said that Daniels kept checking out the window after the last customer left. Tribble also noticed that Daniels did most of the communicating with Green; she appeared to give him signals.
¶ 8. Following a shootout with Hogan, the three individuals escaped from the bank without having taken any money. Hogan was injured by a shot to his foot, and a bullet also passed through his shirt without striking his body. A short time after the attempted robbery, police pulled over a gold Jeep Cherokee that matched a description of a vehicle seen leaving the area of the crime. The Jeep had grass hanging from its undercarriage, as if someone had recently driven it through tall grass. Glenn was driving the Jeep, and Daniels was riding with him. Glenn told the officers that they were trying to find somewhere to make out. Officers took Glenn and Daniels back to the bank, where Daniels was identified as the female who was involved with the robbery. Bank employees did not identify Glenn as one of the individuals involved with the attempted robbery, but they recognized him from his monthly visits to the bank to cash his father’s check.
¶ 9. It was later revealed that the gold Jeep appeared to be the same one that Hogan and other bank employees had noticed suspiciously parked across the street from the bank. They did not see it on the day of the attempted robbery, but they had seen it a number of times previously. Hogan and the bank tellers believed the Jeep was suspicious because no one ever exited the Jeep, and it drove away every *152 time Hogan went outside to get the license plate number. According to Hogan, he never saw anyone inside the Jeep because it was driven away, and it had tinted windows.
¶ 10. After stopping the Jeep, officers continued searching the area for other suspects, which led them to an abandoned house. The house was suspicious because it appeared as if someone had recently driven through the high grass in the front yard. This connected the house to the gold Jeep that officers had stopped. Inside the house, officers discovered the two backpacks carried by the suspects during the attempted robbery. A pink backpack recovered in the bedroom closet contained two handguns: a Ruger .45 millimeter automatic, and a Jennings .9 millimeter. The other backpack was black and blue, and officers found it in the living room. It contained various articles of clothing that the suspects had worn during the attempted robbery: two wigs, a drawstring bag, and a brown purse. Inside the purse was ammunition for a .45 millimeter handgun, latex gloves, and some zip ties formed into handcuffs.
¶ 11. While in the house, officers apprehended Green as he tried to escape. Shortly thereafter, officers also apprehended Smith running through a field approximately 300-400 yards behind the house. Smith did not have on a shirt, but he was wearing a black skirt similar to the one seen in the surveillance video. Outside the house, officers discovered a black brassiere. Green was taken to the hospital because he had been hit by two bullets during the gunfight with Hogan. It was revealed that he had wrapped a brassiere around one of the bullet wounds. At the hospital, Hogan identified Green as the shooter from the bank. At trial, Hogan also identified Smith as the third individual in the bank during the attempted robbery.
¶ 12. After the State rested its case-in-chief, Green pleaded guilty to charges of armed robbery and possession of a firearm by a felon. He continued to assert not guilty pleas on the charges of conspiracy to commit armed robbery and aggravated assault. After Green entered his guilty pleas, he took the stand to assert his defenses to the remaining charges, and he also gave exculpatory testimony for his co-defendants.
¶ 13. According to Green, it was not his idea to rob the bank, but that of a man named Rico Brown. Green said he had been shooting dice with Rico a few days earlier and had amassed a considerable debt. Green testified that he owed Rico $2,400, but the State questioned whether he originally told the authorities that he owed Rico $4,700. Rico demanded that Green repay the debt by the weekend. Green said that Rico drove him by the Cleveland State Bank and told him to rob the bank to get the money. Green said that it was all Rico’s idea, and Rico even gave him the two handguns found in the backpack.
¶ 14. None of the other three defendants put on a case in defense. Instead they relied on Green’s exculpatory testimony that they were unaware of the plan to rob the bank to convince the jury that they were not involved in the plan to rob the bank.
¶ 15. The jury convicted Glenn, Daniels, and Smith of conspiracy to commit armed robbery and attempted armed robbery. The circuit court then sentenced each of them to five years on the conspiracy charge and twenty years on the attempt charge, with the sentences to run consecutively and without eligibility for parole. Each of them now appeals his or her convictions.
*153 ANALYSIS OF THE ISSUES
¶ 16. There are three separate appellants in the present case. Some of them assert the same or similar issues, but because the facts are particular to each appellant, we will address each of their claims separately. We begin with Smith’s issues.
I. Smith

A. Insufficient Evidence

¶ 17. In reviewing a trial court’s denial of motions for a directed verdict and JNOV, we must look at the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). We will ask whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test[,] it is insufficient to support a conviction.” Id. at (¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the essential elements beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 18. Mississippi Code Annotated section 97-3-79 (Rev.2006) defines armed robbery as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
With those elements of robbery in mind, this Court addressed a similar argument regarding an attempted-armed-robbery conviction of an abettor in Nichols v. State, 822 So.2d 984, 989 (¶ 7) (Miss.Ct.App.2002). In Nichols, we set out the applicable law as follows:
To commit robbery, a person must “take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person.” McKee v. State, 791 So.2d 804, 807(¶8) (Miss.2001). To attempt a crime, a person must possess the intent to commit the particular crime, commit an act toward committing the crime, and fail to consummate the offense. Greenwood v. State, 744 So.2d 767, 771(¶ 19) (Miss.1999). “Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.” Gleeton v. State, 716 So.2d 1083, 1088(¶ 17) (Miss.1998).
Nichols, 822 So.2d at 989(¶ 7).
¶ 19. In support of the charge of attempted armed robbery, the State put on evidence that Smith disguised himself as a woman, entered the bank with Green and Daniels, and shuffled around nervously as Green attempted to hold up the teller with a handgun, all the while shielding his face from view. Thereafter, he was caught attempting to escape from the abandoned safe house where police apprehended Green, and he was still wearing the same women’s skirt that he wore during the attempted robbery. Smith, Daniels, and Green each carried a bag or a purse into the bank, and police recovered various items in those bags that could be used in a bank robbery, including two handguns, ammunition, zip ties, and latex gloves. We find that this evidence was sufficient to establish each of the necessary elements of attempted armed robbery.
*154 ¶ 20. The facts presented were also sufficient evidence to allow the jury to infer that Smith was involved in a conspiracy to rob the Cleveland State Bank with Glenn, Daniels, and Green. The only element of conspiracy to commit armed robbery is an agreement among two or more people to commit the crime. Miss.Code Ann. § 97-1-1(1)(a) (Rev.2006); see also Stovall v. State, 873 So.2d 1056, 1058(¶ 11) (Miss.Ct.App.2004). A “conspiracy agreement need not be formal or express, but it may be inferred from the circumstances, particularly by declarations, acts[,] and conduct of the alleged conspirators. Furthermore, the existence of a conspiracy, and a defendant’s membership in it, may be proved entirely by circumstantial evidence.” Neal v. State, 806 So.2d 1151, 1157(¶ 14) (Miss.Ct.App.2002) (quoting Harris v. State, 731 So.2d 1125, 1132(¶42) (Miss.1999)).
¶ 21. From the evidence presented, we find that there was sufficient evidence to support each of the required elements of attempted armed robbery and conspiracy to commit armed robbery. Accordingly, we find that the circuit court did not err in denying Smith’s motion for a directed verdict and his motion for JNOV.

B. Weight of the Evidence

¶ 22. A motion for a new trial questions the weight of the evidence. Bush, 895 So.2d at 844(¶ 18). Such a motion is within the discretion of the trial court, which “should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. When reviewing a denial of a motion for a new trial, we weigh the evidence in the light most favorable to the verdict. Id.
¶23. Smith did not take the stand to rebut the charges or offer his story of the events. He also did not present any other evidence in his defense. Instead, he relied solely on Green’s testimony that Green only tried to rob the bank to pay a debt to Rico, and Green did not make his plans known to any of the other alleged conspirators. Ultimately, it was for the jury to judge the witnesses’ credibility. Jones v. State, 920 So.2d 465, 472(¶22) (Miss.2006) (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). In this case, the jury rejected Green’s exculpatory testimony that he only convinced Smith and Daniels to dress up as part of a prank; instead, the jury found that they, along with Glenn, were directly involved in the attempted robbery.
¶ 24. Taking the evidence in the light most favorable to the verdict, we do not find Smith’s convictions to be contrary to the overwhelming weight of the evidence. His arguments are, therefore, without merit.
II. Daniels

A. Defective Indictment

¶ 25. We first note that, notwithstanding the State’s waiver argument, the issue of whether an indictment failed to charge an essential element of a crime is not waived if an appellant did not assert the issue before the circuit court. Durr v. State, 446 So.2d 1016, 1017 (Miss.1984). Therefore, even though Daniels did not raise this issue at the time of trial or in her post-trial motions, we will address its merits.
¶ 26. Under Mississippi Code Annotated section 99-19-5(1) (Rev.2007), a jury may convict a defendant of the crime charged in an indictment or of an attempt to commit the same offense. Neverthe *155 less, for an indictment to properly charge a defendant with attempt, it must charge two elements: “(1) the intent to commit the offense, and (2) an overt act toward its commission.” Maxie v. State, 330 So.2d 277, 277 (Miss.1976) (citing Ford v. State, 218 So.2d 731, 732 (Miss.1969)).
¶ 27. As we also stated above, Mississippi Code Annotated section 97-3-79 defines armed robbery as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery....
¶ 28. Regarding Count II, attempted armed robbery, the allegedly defective indictment about which Daniels now complains charged the appellants as follows:
[Ijndividually or while aiding and abetting each other and/or acting in concert with each other, did unlawfully, wilfully!,] and feloniously, commit an assault upon the person of Donnell Hogan with a certain deadly weapon, to-wit: a pistol, and did then and there, feloniously put them, the said Donnell Hogan and/or Mary Ann Tribble and/or Janet Porter Free, in fear of immediate injury to their persons by the exhibition of said deadly weapon as aforesaid, with the unlawful and felonious intent to steal, they, the said Lewis Green, Crystal Daniels, Gregory Smith, and Joseph [Antwan] Glenn, while aiding and abetting each other and/or while acting in concert with other did unlawfully, wilfully!,] and feloniously attempt to take, steal!,] and carry away from the person of or in the presence of and against the will of the said Mary Ann Tribble, certain personal property, to-wit: United States currency, of the property of The Cleveland State Bank, a corporation, and/or depositors in The Cleveland State Bank, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Mississippi....
As seen from the quoted passage, the indictment charged that Daniels and her fellow appellants acted with the intent to steal the property of the bank. The indictment also charged that they did so by exhibiting and firing a pistol — acts which put the employees of the bank in fear of immediate injury to them persons.
¶ 29. After reviewing the indictment, we see no merit in Daniels’s argument that the State failed to properly charge her with attempted armed robbery. All of the elements necessary for attempt and for armed robbery are present, including the specific overt acts that took place inside the bank. The indictment also alleged that the appellants acted in concert with each other. We find that the indictment properly charged Daniels with attempted armed robbery, and this issue is without merit.

B. Motions for JNOV and for a New Trial

¶ 30. The standards of review regarding these issues are set out in the section addressing Smith’s alleged errors concerning the rulings on his post-trial motions, and those same standards are applicable to Daniels’s alleged errors concerning the rulings on her post-trial motions. Furthermore, for the same reasons that Smith’s issues concerning his post-trial motions were without merit, Daniels’s issues are also without merit.
¶ 31. If anything, the evidence against Daniels was stronger than the evidence against Smith. She too disguised herself as a member of the opposite sex, and she also entered the bank with Green and appeared to be nervous the entire time. Ad *156 ditionally, Hogan and the bank tellers all testified that Daniels communicated with Green while he was at the teller window, and she seemed to be giving him signals. They also testified that she also walked over to the door and checked outside after the last bank customer left. It was immediately following this event that Green pulled out the handgun in an attempt to hold up Tribble.
¶32. Also like Smith, Daniels did not take the stand or call any witnesses in her defense. She too relied solely on Green’s testimony that he was the only one who knew about the plan to rob the bank; therefore, that was the only evidence in her favor for the jury to consider. The jury had the opportunity to consider Green’s testimony, but it rejected his account in light of the evidence of Daniels’s participation in the attempted armed robbery.
¶ 33. As with Smith, we find that there was sufficient evidence of each of the necessary elements of attempted armed robbery and conspiracy to commit armed robbery. Furthermore, despite Green’s testimony, we find that Daniels’s convictions were not against the overwhelming weight of the evidence. Accordingly, we find that the circuit court did not err in denying Daniels’s motion for JNOV and her motion for a new trial, and we find that this issue is without merit.

C. Ineffective Assistance of Counsel

¶ 34. The standard to be applied to an ineffective assistance of counsel claim was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, which this Court must follow, the defendant bears the burden of proof that: (1) counsel’s performance was deficient, and (2) the deficient performance prejudiced the defense. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). We look at the totality of the circumstances in determining whether counsel was effective. Id. There is a strong but rebuttable presumption that counsel’s performance fell within the wide range of reasonable professional assistance. Id.
¶ 35. Specifically, Daniels now claims that her trial counsel was ineffective for only cross-examining co-defendant Green and for failing to cross-examine any of the State’s witnesses. She does not, however, allege what information, if any, that her trial counsel could have elicited from the State’s witnesses on cross-examination. Daniels also briefly argues that her trial counsel should have filed pretrial motions to suppress identification of her by the witnesses. However, her argument is limited to a single sentence; she does not cite to any evidence to support why the identification was improper or to any case law that supports her argument.
¶ 36. The decision of whether to cross-examine a witness is trial strategy, and it is within trial counsel’s discretion. Golden v. State, 968 So.2d 378, 389(¶46) (Miss.2007). In Golden, the supreme court noted that “absent a showing of some helpful fact which clearly could — and should— have been developed on cross-examination, such decisions do not warrant a finding of ineffective assistance of counsel.” Id. at 390(¶ 49). We find the reasoning in Golden to be dispositive of Daniels’s issue on appeal. We find no support for Daniels’s claim that her trial counsel’s performance was ineffective, nor do we find any indication that Daniels’s defense was prejudiced by her trial counsel’s decision not to cross-examine the State’s witnesses. Accordingly, this issue is without merit.
III. Glenn

A. Motion for-JNOV

¶ 37. As with Smith’s and Daniels’s issues regarding their motions for *157 JNOV, the same standard applies to our review of the trial court’s denial of Glenn’s motion for JNOV.
¶ 38. The State presented a number of facts that implicated Glenn in the plan to rob the bank. Shortly after the attempted armed robbery, Glenn was stopped by police officers while driving the gold Jeep that had been seen near the scene of the crime. Officers noticed grass hanging from the undercarriage of the Jeep, which eventually led them to the abandoned house where they apprehended Green and Smith. That house was owned by Glenn’s family. When police stopped Glenn, Daniels, who was identified as one of the robbers, was a passenger in the Jeep. There was also blood on the back seat of the Jeep, presumably from the gunshot wounds sustained by Green. Furthermore, while Green claimed that he was the only one who knew he was going to attempt to rob the bank, he admitted that Glenn drove them to the bank and waited for them to come out of the bank. Green testified that Glenn knew “we was going to come running.”
¶ 39. The evidence was sufficient to establish Glenn’s guilt of each element of conspiracy. The evidence also was sufficient to enable a reasonable juror to find, beyond a reasonable doubt, that Glenn— knowing of the plan to rob the bank— drove Green, Daniels, and Smith to the bank, waited for them outside, and then served as the getaway driver. These acts rendered him liable as a principal to the attempted armed robbery. McCuiston v. State, 791 So.2d 315, 317 (¶¶ 5-6) (Miss.Ct.App.2001); Miss.Code Ann. § 97-1-3 (Rev.2006) (stating that “[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such.... ”). We find that the circuit court did not err in denying Glenn’s motion for JNOV, and this issue is without merit.

B. Motion for a New Trial

¶ 40. Like Smith and Daniels, Glenn did not take the stand, and he did not offer any evidence in his defense. He also relied solely on Green’s testimony that the other alleged conspirators knew nothing about the plan. From the evidence presented, we do not find Glenn’s convictions to be against the overwhelming weight of the evidence. We find no manifest injustice in the jury’s verdict; therefore, we affirm the circuit court’s denial of Glenn’s motion for a new trial.
¶ 41. AS TO EACH APPELLANT, RESPECTIVELY, THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY OF CONVICTION OF COUNT I, CONSPIRACY TO COMMIT ARMED ROBBERY, AND SENTENCE OF FIVE YEARS, AND COUNT II, ATTEMPTED ARMED ROBBERY, AND SENTENCE OF TWENTY YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCES TO RUN CONSECUTIVELY AND WITHOUT ELIGIBILITY FOR PAROLE, IS AFFIRMED. ALL COSTS OF THIS APPEAL WITH RESPECT TO APPELLANT SMITH ARE ASSESSED TO BOLIVAR COUNTY. ALL COSTS OF THIS APPEAL WITH RESPECT TO APPELLANT GLENN AND APPELLANT DANIELS ARE ASSESSED TO APPELLANT GLENN AND APPELLANT DANIELS, RESPECTIVELY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. Green's conviction of conspiracy to commit armed robbery is not presently before this Court on appeal.