**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2010-KA-00807-SCT**

*DENNIS TAYLOR*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/07/2010 |
| TRIAL JUDGE: | HON. DAVID H. STRONG, JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| | LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/02/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    On April 7, 2010, Dennis Taylor was convicted by a Lincoln County jury of one count of robbery pursuant to Mississippi Code Section 97-3-73 and one count of conspiracy pursuant to Mississippi Code Section 97-1-1(i). Taylor was sentenced to fifteen years, three suspended, for robbery, and five years, all five suspended, for conspiracy. The sentences were set to run consecutively. Arguing the verdicts were against the weight and sufficiency of the evidence, Taylor appealed to this Court. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.     On May 15, 2009, Dennis Taylor, Lakesha Bledsoe (Nussie), and Emmanuel Smith, Jr. (Bubblehead)[1] were indicted for robbery of J & B Handy Mart, Inc. (Handy Mart), located in Brookhaven, Mississippi, in violation of Mississippi Code Section 97-3-73, and conspiracy to rob the Handy Mart in violation of Mississippi Code Section 97-1-1.

¶3.     The robbery occurred on December 29, 2008.  The Handy Mart clerks on duty during the robbery, Tequierra Wells and Holly Sutton, testified to what transpired on that date.  Wells said she had turned on the gas pump for several individuals, and after getting gas, they drove off without paying.  Later that day, three individuals, whom she recognized as the ones who had driven off without paying for gas, came inside the Handy Mart.  Wells stepped outside in an effort to see their car, but it was not in view, so she went back inside the store.

¶4.     Shortly after entering the Handy Mart, one of the individuals went to the back of the store to get beer, while the other two individuals waited at the front of the store.  One of the individuals walked around the corner where the clerks were standing and said, "If we didn't give him the money that he was going to take our lives."  Wells testified that she and Sutton first refused to give him money, but ultimately opened the cash drawer, because the man said, "I'm not going to tell you again.  Open that drawer now or you and the other girl will not live to see the next day."  The man took the money when Sutton opened the cash register, and the three robbers left the store.  Wells testified she gave the three individuals the money only because she was scared.  She quit her job after this incident.  Sutton also never returned to

---

[1]Bledsoe (Nussie) and Smith (Bubblehead) will be referred to by nickname to avoid confusion, as they are referred to by nickname throughout the proceeding.

work at the Handy Mart. A few days before trial, Wells identified Taylor as the man who had threatened her and Sutton, from a photograph shown to her by police.

¶5. According to passengers in the car occupied by the robbers, the following events took place. On December 29, 2008, Marcus Lee, Taylor, Nussie, and Bubblehead went to the Handy Mart in Lee's gold Chrysler and stole gas. They then returned to Kimberly Black's residence. Tina Dixon was staying with Black. The two girls joined the group, and they returned to the Handy Mart in Lee's gold Chrysler.

¶6. When they arrived at the Handy Mart, Taylor, Nussie, and Bubblehead got out of the car and said they were going inside to buy something. Dixon testified that Taylor was wearing a towel on his head. Bubblehead came out with two cases of beer, and Nussie and Taylor were saying, "we did it." Lee also testified that Nussie said, "we did it," as she was getting into the car. Dixon and Black asked to get out of the car, because they wanted nothing to do with a robbery.

¶7. Taylor said he was upset that no one "had his back" during the robbery, but Nussie assured Taylor she "had his back." From the Handy Mart, the passengers went to the Hilltop Motel in Hazelhurst. Dixon and Black stayed in a room, while Taylor, Bubblehead, and Nussie shared a room. Taylor, Bubblehead, and Nussie shared the money from the robbery. After spending the night at the Hilltop Motel, the passengers went to a mall in Jackson. Taylor and Nussie bought clothing. After leaving the mall in Jackson, the passengers returned to Brookhaven, where they learned the police were looking for them.

¶8. Taylor testified in his own defense, and stated he was living in New Hebron, Mississippi, at the time of the robbery. He said he had lived in Lincoln County for only a short

3

period of time when he became involved in a romantic relationship with a girl named Jessica. He claimed that he had heard about the robbery, but denied having been involved. Taylor testified to having a close, brotherly relationship with Bubblehead, and to having had sexual relationships with both Dixon and Black. He said he was not with the people who had robbed the Handy Mart, and he had not traveled to Jackson with any of the passengers in Lee's car. He said he would not "hang out with" the likes of Lee.

¶9. Taylor watched the video surveillance of the Handy Mart, and referring to the person with the towel over his head, Taylor stated, "It ain't even my style of walking or style of dressing or none of that." Taylor testified that in December 2008, he was a scaffold builder and was working out of town.

¶10. The parties stipulated that Bonnie Holmes and her husband owned the Handy Mart, and that approximately $1,200 had been stolen from the store. After the State rested, the defense moved for directed verdicts of acquittal, which were denied. All three defendants were found guilty on both charges. Taylor was sentenced to fifteen years, three suspended, for robbery, and five years, all five suspended, for conspiracy. The sentences were set to run consecutively.

## DISCUSSION

### I. Whether there was sufficient evidence that Taylor participated in a conspiracy.

¶11. Taylor asserts there was not sufficient evidence to prove he conspired to rob the Handy Mart. We disagree. In determining whether the evidence was sufficient to support the verdict, the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Bush v. State***, 895 So. 2d 836, 843 (Miss. 2005) (citing ***Jackson***

4

*v. Virginia,* 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d. 560 (1979)). "If the facts and inferences so considered point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion [for judgment not withstanding the verdict] is required." ***Bush***, 895 So. 2d at 843 (citing ***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985) (citing ***May v. State,*** 460 So. 2d 778, 781 (Miss. 1984))).

¶12. To determine whether the evidence was sufficient to support a conspiracy conviction, we turn to Mississippi Code Section 97-1-1(i), which states, "If two (2) or more persons conspire either: (a) to commit a crime; or . . . (h) to accomplish any unlawful purpose, or a lawful purpose by an unlawful means; such persons and each of them, shall be guilty of a felony . . . ." Miss. Code Ann. § 97-1-1(i) (Rev. 2006). It is undisputed that a crime occurred, therefore, subsection (a) has been met. It is also undisputed that more than one person participated in the robbery of the Handy Mart. Therefore, this Court is charged with the task of determining whether the evidence was sufficient to find Taylor *conspired* with another individual or individuals to commit the robbery.

¶13. This Court has held that parties entering into a conspiracy must understand "they are entering into a common plan and knowingly intend to further its common purpose." ***Griffin v. State***, 480 So. 2d 1124, 1126 (Miss. 1985) (citing ***McDonald v. State***, 454 So. 2d 488, 495 (Miss. 1984)). "The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators." ***Griffin***, 480 So. 2d at 1126. *See also **Clayton v. State***, 582 So. 2d 1019 (Miss. 1991).

5

¶14. There is direct evidence that Taylor, Nussie, and Bubblehead walked into the Handy Mart; while one served as lookout, one took beer, and the other took money. The three argued over who had whose back while robbing the Handy Mart. Later, the three divided the money.

¶15. After the robbery, Nussie said, "we did it." Although Taylor asserts this statement was incomplete, because Nussie did not specify what "it" was, we find her statement sufficient to prove conspiracy. The trial judge stated,

> . . . There has been testimony to the effect of, we did it, which would tend to prove that there was a conspiracy between one or more persons to commit that crime . . . there is testimony that corroborates the manner in which the crime was carried out . . . . There is testimony with regard to a dispute among the alleged conspirators as to their levels of participation.

¶16. In a similar case, *Ellis v. State*, 778 So. 2d 114, 118 (Miss. 2000), this Court stated:

> Here there is testimony that three individuals were riding in the car together. The driver asks one of the passengers is he about to "do that," to which the passenger replies that he is about to "do that" now . . . the driver asked the first passenger if he had done that, to which he replied in the affirmative . . . these facts would allow a rational jury to find beyond a reasonable doubt that Ellis and Holden had conspired to kill Johnson.

The language "do that" was sufficient to establish a conspiracy in *Ellis*, and "we did it," in conjunction with the other evidence in this case, is enough for a rational jury to find that Taylor, Nussie, and Bubblehead entered into a conspiracy to rob the Handy Mart.

¶17. Taylor argues this case is synonymous with *Johnson v. State*, 642 So. 2d 924 (Miss. 1994). In that case, Johnson was asked by an undercover agent to find a source for cocaine. Johnson then took the agent to the home of a man named Spruill. *Id*. at 926. Johnson and the agent asked Spruill to sell them cocaine, and Spruill sold drugs to the agent. *Id*. Johnson was convicted of conspiracy to sell cocaine. This Court reversed Johnson's conspiracy conviction,

6

finding insufficient evidence that Spruill and Johnson had conspired, because Spruill did not know Johnson would bring an individual to his house to buy cocaine. ***Johnson***, 642 So. 2d at 928. In this case, there is evidence the three perpetrators were knowingly involved in a common plan to commit robbery.

¶18. In ***Glenn v. State***, 996 So. 2d 148, 150 (Miss. Ct. App. 2008), Glenn, the driver of the car, was convicted of conspiracy to commit attempted armed robbery. The Court of Appeals held:

> The evidence was sufficient to establish Glenn's guilt of each element of conspiracy. The evidence also was sufficient to enable a reasonable juror to find, beyond a reasonable doubt, that Glenn – knowing of the plan to rob the bank – drove Green, Daniels, and Smith to the bank, waited for them outside, and then served as the getaway driver.

*Id*. at 157. In ***Glenn***, serving as getaway driver was enough to uphold a guilty verdict ***Id***. at 157. There is substantially more evidence to support the jury's verdict in this case. Taylor went into the Handy Mart with two other active participants in the robbery, helped robbed the store, and assumed the role of getaway driver. Taylor, Nussie, and Bubblehead then discussed "who had Taylor's back" during the robbery and divided the money three ways.

¶19. In ***Carr v. State***, 208 So. 2d 886, 889 (Miss. 1968), the Court held "to sustain a conviction, the evidence must show beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed." There was evidence Taylor knew of the plan to rob the Handy Mart and proceeded to act out the plan and serve as getaway driver. The evidence shows that Taylor, Nussie, and Bubblehead entered into an agreement to rob the Handy Mart. Because every element of the

conspiracy statute has been met, the evidence is sufficient for a reasonable jury to have found Taylor guilty of conspiracy.

**II.     Whether the verdicts are against the overwhelming weight of the evidence.**

¶20.    Taylor argues the conspiracy verdict is against the overwhelming weight of the evidence. Mississippi Code Section 97-1-1(i) states, "[i]f two (2) or more persons conspire either: (a) to commit a crime; or . . . (h) to accomplish any unlawful purpose, or a lawful purpose by any unlawful means; such persons, and each of them, shall be guilty of a felony . . . ." Miss Code Ann. § 97-1-1 (i) (Rev. 2006).  It has been established that Taylor and two others entered into a plan to commit a crime.  The evidence clearly supports all elements of the conspiracy statute.

¶21.    Taylor also asserts the robbery conviction is unsupported by the weight of the evidence. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush***, 895 So. 2d at 844  (citing ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997)).  The evidence should be viewed in the light most favorable to the verdict. ***Dilworth v. State***, 909 So. 2d 731, 737 (Miss. 2005).  The trial court will grant a new trial "only in exceptional cases in which the evidence preponderates heavily against the verdict." ***Id.***  (citing ***Amiker v. Drugs for Less, Inc.***, 796 So. 2d 942, 947 (Miss. 2000)).

¶22.    Applying this standard, we find that the verdict was not against the overwhelming weight of the evidence.  Mississippi Code Section 97-3-73 states, "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will,

by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss. Code Ann. § 97-3-73 (Rev. 2006).

¶23. The sum of $1,200 was taken from the Handy Mart; this was personal property of Bonnie Holmes and her husband. Both store clerks testified that Taylor demanded they give him the money several times, and ultimately insisted the money be given to him or the clerks would not "live to see another day." Both clerks were afraid for their lives due to Taylor's threats. The frightening experience caused both clerks to quit their jobs.

¶24. Taylor argues there was no showing of possible immediate injury to the clerks. He cites *Clayton v. State,* 759 So. 2d 1169, 1172 (Miss. 1999), arguing Clayton was not convicted of robbery because he did not take action "intending to intimidate." In *Clayton*, Clayton walked behind a woman and snatched her purse. The victim was never put in fear, because she did not see Clayton coming and he did not speak to her. *Id*. But, in this case, Taylor walked behind the counter at the Handy Mart to where the clerks were standing, and he continually threatened their lives until they gave him money.

¶25. Taylor next asserts that, even if the clerks were in fear, there is no causal connection between being placed in fear and relinquishing the money. But Wells testified that fear was the *only* reason they gave money to Taylor.

## CONCLUSION

¶26. The evidence was sufficient to support the jury's verdicts on both charges, and the verdicts were not against the overwhelming weight of the evidence. For these reasons, we affirm.

9

¶27. **COUNT I: CONVICTION OF ROBBERY AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE FIRST TWELVE (12) YEARS TO SERVE AND WITH THREE (3) YEARS SUSPENDED ON POST RELEASE SUPERVISION, WITH CONDITIONS, AFFIRMED. COUNT II: CONVICTION OF CONSPIRACY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, SUSPENDED ON POST RELEASE SUPERVISION, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR.**